## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WASHINGTON SQUARE LIMITED PARTNERSHIP, R.L.L.P. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. Action No. 05-2420 (EGS) |
| GIUSEPPE LENZO, et al. | ) ) | |
| Defendants. | ) ) | |

### MEMORANDUM IN SUPPORT OF MOTION
### FOR ORDER AUTHORIZING SERVICE BY
### COMMERCIAL CARRIER AND ORDINARY MAIL

Plaintiff, Washington Square Limited Partnership, R.L.L.P. (hereinafter, "Plaintiff"), submits this memorandum in support of its motion, pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure, for an order authorizing service of process on defendant Giuseppe Lenzo, individually and as Trustee, by the methods of commercial carrier service and ordinary mail, postage pre-paid, at an address in Italy where he is presently located.

### FACTUAL BACKGROUND

On December 16, 2005, Plaintiff filed this action for statutory interpleader under 28 U.S.C. § 1335 with respect to certain rental payments which are the subject of competing claims among the defendants. The competing claims concern two, one-sixth (1/6) interests in the leased property which were formerly held of record in the name of Virginia Di Perna Lenzo, who died on February 26, 2005. Several years prior to her death, and specifically by Deed dated May 13, 2003, Virginia Di Perna Lenzo conveyed

legal title to these one-sixth interests to two Trusts, the Virginia Lenzo Trust and the Tindaro Lenzo Trust, which name her son, Giuseppe Lenzo as Trustee and sole beneficiary. Mr. Lenzo's sister, defendant Nunziata Lenzo Romano, disputes the validity of the title held by these Trusts, as set forth more fully in her Answer to the Complaint filed on or about January 12, 2006 (docket entry no. 7).

Mr. Lenzo has not answered the complaint[1] and, to date, Plaintiff has been unable to formally serve him at his residence at the Mirage Condominiums, located at 8925 Collins Avenue, Surfside, Florida 33154. When Plaintiff attempted to serve Mr. Lenzo at his Florida residence in late December 2005, the property manager there advised that Mr. Lenzo was presently out of the country, was not expected to return for several months, and that his exact return date was not known. See ¶ 2 to Declaration of Douglas R. Frew ("Frew Decl."). The property manager further advised that, during Mr. Lenzo's absence, mail addressed to Mr. Lenzo was being forwarded by management to an address overseas. Id. The property manager would not release that address without a subpoena. Id.

On January 4, 2006, Plaintiff issued a subpoena to The Continental Group, Inc. ("Continental"), which is the company that manages the Mirage Condominiums, requesting "documents sufficient to show any address for Giuseppe Lenzo, whether

---

[1]    The only other named defendant not to have answered is the individual to be appointed as Personal Representative of the Estate of Virginia Lenzo, which Plaintiff has denominated as "Jane Doe" until the petition for probate and appointment of personal representative is acted upon by the D.C. probate division. Until that occurs, there is no entity with the legal status of "personal representative" who can answer the complaint for the "estate." However, the only person who has applied to be personal representative, Floriana Nestore, is represented by the same attorney who represents defendant Nunziata Lenzo Romano, and that attorney already has agreed to accept service on Ms. Nestore's behalf if and when she is appointed personal representative. (See Exh. F to Complaint). Plaintiff thus does not at this time anticipate any difficulty in effectuating service on Ms. Nestore when and if she obtains the legal status of "personal representative."

foreign or domestic, to which mail addressed to Giuseppe Lenzo at 8925 Collins Avenue, Surfside, FL 33154 is currently being forwarded by you." See ¶ 4 of Declaration of Jeremy S. Simon ("Simon Decl."). In response to that subpoena, Continental provided Plaintiff with the following address: "Giuseppe Lenzo, Via I Stella C.P. No. 62, 36011 Arsiero (VI) Italy" and confirmed that mail being sent to that address by the property manager of the Mirage is not being returned as non-deliverable. See ¶ 5 of Simon Decl.

Plaintiff has investigated options for serving Mr. Lenzo while he is in Italy. One option would be to deliver the summons and complaint to the designated Italian governmental authorities for service of process. However, that procedure is both expensive and time consuming, requiring, among other things, that all service papers, including the complaint and exhibits, first be translated into Italian. See "Service of Judicial Documents in Italy," attached to Simon Decl. [2] The requisite translation would not only be expensive, but would be wasteful here since Mr. Lenzo is a United States citizen residing in Florida who is fluent in English.[3] The procedure also is time consuming because, once the judicial papers actually reach the designated government agency in Italy, it takes that agency at least two months, and possibly longer, to effectuate service. It is entirely possible that Mr. Lenzo would return to the United States before that procedure could be completed, thereby rendering the whole effort futile.

---

[2]     An alternative to service through the Italian authorities would be to employ a private service agent in Italy. That is both costly and, according to the informational brochure obtained by Plaintiff, is of questionable validity. See "Service of Judicial Documents in Italy," attached to Simon Decl.

[3]     According to the public record, Mr. Lenzo has owned his condominium at 8925 Collins Avenue, Surfside, FL 33154 since 1995, maintains a current Florida driver's license bearing that address and recently registered a car in Florida under that address. The Collins Avenue address also is the return address for Mr. Lenzo appearing on the Deed conveying title to the Virginia Lenzo Trust and Tindaro Lenzo Trust attached as Exh. C to the Complaint.

By this motion, Plaintiff respectfully requests that this Court exercise its authority pursuant to F.R.C.P. 4(f)(3) to craft an alternate method of service that is fair and efficient under these circumstances. Specifically, Plaintiff seeks authority to serve the summons and complaint, and this court's order of December 21, 2005, on Mr. Lenzo by a commercial delivery service (i.e, DHL, Federal Express or an equivalent service) and, alternatively, by ordinary mail, postage pre-paid, directed to the referenced address in Italy. Rule 4(f)(3) affirmatively authorizes federal district courts to direct any form of service that is not prohibited by an international agreement. Service by mail is not prohibited under the applicable treaty between the United States and Italy (and, indeed, is affirmatively permitted under that treaty) and, under the circumstances presented here, is reasonably calculated to apprise Mr. Lenzo of this litigation (of which Plaintiff believes he already is aware). [4]

Plaintiff seeks approval for two methods of service – by commercial carrier and ordinary mail -- so as to avoid a situation where Mr. Lenzo has the ability to thwart service by declining to sign for a commercial carrier delivery. The record demonstrates that Mr. Lenzo is on notice of this action, that he has chosen not to participate voluntarily, and that he therefore is likely to avoid service if given the opportunity. [5] Accordingly, Plaintiff requests that the Court authorize service by ordinary mail, postage

---

[4]     On December 16, 2005, Plaintiff sent a copy of the complaint, with exhibits, by overnight Federal Express to Mr. Lenzo at his Florida address and on December 22, 2005, Plaintiff sent a copy of the Court's Order of December 21, 2005 by overnight Federal Express to Mr. Lenzo at his Florida address. See ¶¶ 2-3 of Simon Decl. Plaintiff believes these documents are the "legal papers" that the property manager at the Mirage Condominiums forwarded to Mr. Lenzo at his address in Italy, as set forth in paragraph 2 of the accompanying Frew Declaration. See also infra note 5.

[5]     In November 2005, prior to the initiation of this lawsuit, Plaintiff received an unsolicited phone call from an attorney who indicated that he expected to be representing Mr. Lenzo in connection with the interpleader action that was then being contemplated, but had not yet formally confirmed his retention.

pre-paid, as an alternate method of service that may be attempted concurrently with delivery through a commercial carrier.

## ARGUMENT

Rule 4(f)(3) is unique among the options for effectuating service on defendants located in foreign countries in that it does not specify a particular method for service. To the contrary, Rule 4(f)(3) permits a court to use its discretion to fashion any means of service that is fair under the circumstances. Courts have authorized a variety of alternative methods for service abroad pursuant to Rule 4(f)(3), including "ordinary mail." Brockmeyer v. May, 383 F.3d 798, 805 (9th Cir. 2004) (citing cases). Courts also have recognized that multiple methods of service may be attempted concurrently. EOI Corp. v. Medical Marketing Ltd., 172 F.R.D. 133 (D.N.J. 1997) (upholding service by commercial carrier and regular mail pursuant to Article 10(a) of the Hague Convention).

Plaintiff is not required to demonstrate that other methods of service would be impractical before invoking Rule 4(f)(3), although, were such a standard to apply, it would be met here. Rule 4(f)(3) is not a method of "last resort," but can be invoked without regard to whether other methods of service enumerated in Rule 4(f) have been attempted. See, e.g., Forum Financial Group v. President and Fellows of Harvard College, 199 F.R.D. 22, 23 (D. Maine 2001) ("Rule 4(f)(3)'s alternative is not a last resort, nor is it any less favored than service under subsections (1) and (2)").

The court's discretion under Rule 4(f)(3) is limited only by minimum standards of due process and by the requirement that the means selected must not be "prohibited by an

---

Plaintiff later was advised that, despite the lawyer's prior indication, the lawyer would not, in fact, be representing Mr. Lenzo. See ¶ 7 of Simon Decl.

international agreement." As set forth more fully below, both of these thresholds are readily met here.

## I.    Service By Mail Satisfies Due Process.

Service of process is "primarily a notice-giving device." Federal Trade Comm'n v. Compagnie De Saint-Gobain-Pont-A-Mousson, 205 U.S.App.D.C. 172, 636 F.2d 1300, 1312 n. 61 (1980). While a mailing in which a delivery receipt is generated is a preferable method, id. at 1313, it is not required. Service by regular mail is permissible in other judicial contexts (such as in adversary proceedings in bankruptcy pursuant to Fed.R.Bankr.Proc. 7004(b)), and, in such cases, there is a presumption of delivery by virtue of the act of mailing. Legille v. Dann, 178 U.S. App. D.C. 78, 544 F.2d 1, 4-5 (1976) ("Proof that mail is properly addressed, stamped and deposited in an appropriate receptacle has long been accepted as evidence of delivery to the addressee."); Makuch v. FBI, 2000 U.S. Dist. LEXIS 9486, at *10 (D.D.C. Jan. 5, 2000) ("There is a 'strong presumption that mails, properly addressed, having fully prepaid postage, and deposited in the proper receptacles, will be received by the addressee in the ordinary course of the mails.'") (citations omitted).

The United States Supreme Court, moreover, has long held that due process permits service by mail so long as such service provides "notice reasonably calculated . . . to apprise interested parties of the pendency of the action." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 318 (1950) (finding due process satisfied by notice "by ordinary mail to the record addresses"). Here, service by regular mail, or alternatively, a commercial delivery service, is reasonably calculated to apprise Mr.

Lenzo of this action since the address to be utilized is one which Mr. Lenzo himself left with his property manager in the United States for forwarding purposes.

**II.     Service By Mail Is Not Prohibited By The Applicable International Agreement.**

   **A.     Service By International Mail Is Not Prohibited By The Applicable Treaty Between The United States And Italy.**

Apart from minimum standards of due process, the only other limit on the Court's discretion is set forth in Rule 4(f)(3) itself, which provides that the Court may authorize service "by other means not prohibited by international agreement." See F.R.C.P. 4(f)(3). The applicable international agreement governing service of process between Italy and the United States is the "Convention on the Service Abroad of Judicial And ExtraJudicial Documents in Civil or Commercial Matters" of November 15, 1965 (hereinafter, the "Hague Convention").[6]

Service by mail is permitted under the Hague Convention pursuant to Article 10(a) of the Convention, which permits litigants to "send judicial documents, by postal channels, directly to persons abroad" provided the "State of destination does not object." See, e.g., Chrysler Corp. v. General Motors Corp., et al., 589 F. Supp. 1182, 1206 (D.D.C. 1984) (holding that the "service of the summons and complaint" pursuant to Article 10(a) "is proper"); L.T. Consultants, Inc. v. The Islamic Republic of Pakistan, 2000 U.S. Dist. LEXIS 22548, C.A. No. 00-00503, at *9 (D.D.C. Sept. 28, 2000) (agreeing that "Plaintiff is correct in its contention that service by mail was proper under Article 10(a) of the Convention").

---

[6]     The Convention is available in the appendix to Rule 4 of the Federal Rule of Civil Procedures (West rev. ed. 2005), at 58-61, and at http://www.hcch.net/index_en.php?act=conventions.text&cid=17.

Whether a State of destination "objects" to the provisions of Article 10 is determined by whether the State formally declares an objection to Article 10(a) at the time it deposits its instrument of ratification pursuant to the procedures set forth in Article 21 of the Convention. See Art. 21 of the Hague Convention; see also EOI Corp. v. Medical Marketing Ltd., 172 F.R.D. 133, 137, 142 (D.N.J. 1997) (finding Article 10(a) applicable as between the United States and the United Kingdom because "neither country specifically objected [pursuant to Article 21] to Article 10(a)")

Italy deposited its instrument of ratification on January 24, 1982, and has not declared any objection to the provisions of Article 10. See Hague Convention Status Table, Declarations of Italy.[7] Thus, since Italy has not objected to the provisions of Article 10(a), available "postal channels," including regular mail and commercial carrier, may be used to effectuate service on defendants located there. See, e.g., R. Griggs Group Ltd. v. Filanto SPA, 920 F. Supp. 1100, 1107-08 (D. Nev. 1996) (upholding service by Federal Express on a defendant located in Italy pursuant to Article 10(a) of the Hague Convention).

**B.      The Dispute Among The Circuit Courts As To The Scope Of Article 10(a) Does Not Compel A Different Conclusion.**

In reviewing the Hague Convention, this Court may note that Article 10(a) uses the term "send judicial documents" whereas other provisions of Article 10 utilize the term "effect service." This difference in terminology has resulted in a dispute among courts as to whether the term "send judicial documents" in Article 10(a) encompasses the term "service" or, alternatively, applies only to judicial documents delivered after service

---

[7]     See http://www.hcch.net/index_en.php?act=conventions.status&cid=17, last updated December 1, 2005 (select "view and or print full status report"). Italy's declarations under the Convention also appear in the appendix to Rule 4 of the Federal Rules of Civil Procedure (West rev. ed. 2005), at page 69-70.

of process has been obtained. The latter position, which has been called into question by the Supreme Court, has been espoused by the Fifth and Eighth Circuits. E.g., Nuovo Pignone v. Storman Asia M/V, 310 F.3d 374, 385 (5th Cir. 2002); Bankston v. Toyota Motor Corp., 889 F.2d 172, 174 (8th Cir. 1989). The broader view – that "send" encompasses "service" – has been adopted by the Second Circuit in Ackermann v. Levine, 788 F.2d 830 (2d Cir. 1986) and the Ninth Circuit in Brockmeyer v. May, 383 F.3d 798 (9th Cir. 2004), as well as by the three reported decisions in this Circuit that have considered the issue. See, e.g., Chrysler Corp. v. General Motors Corp., et al., 589 F. Supp. 1182, 1206 (D.D.C. 1984); L.T. Consultants, Inc. v. The Islamic Republic of Pakistan, 2000 U.S. Dist. LEXIS 22548, C.A. No. 00-00503, at *9 (D.D.C. Sept. 28, 2000); Doe v. State of Israel, 400 F.Supp.2d 86, 2005 U.S. Dist. LEXIS 27471 (D.D.C. Nov. 10, 2005). It also is consistent with the Supreme Court's interpretation of the scope and purpose of the Hague Convention, as discussed more fully below.

Both the Second and Ninth Circuits interpret Article 10(a) of the Hague Convention as authorizing service of a summons and complaint by international mail on defendants located in foreign countries (such as Italy) that have not objected to Article 10(a) in their documents of ratification. The Second Circuit, in Ackermann, held that service by mail is independently authorized under Article 10(a) of the Hague Convention, Ackermann, 788 F.2d at 839-40, and is not limited by the provisions of Rule 4(f). Id. at 840 (noting that Article 10(a) "supplements – and is manifestly *not* limited by Rule 4").

The Ninth Circuit, in Brockmeyer, "joined the Second Circuit in holding that the Hague Convention allows service of process by international mail," but held that any service by mail also must comply with the requirements of Rule 4(f). Brockmeyer, 383

F.3d at 808.  Specifically, the plaintiff must demonstrate compliance with either Rule

4(f)(2)[8] or Rule 4(f)(3), which, in the court's view, are the only two provisions of Rule

4(f) that affirmatively authorize service by mail.  Brockmeyer, 383 F.3d at 808-09.  For

purposes of this motion, the distinction between Ackermann and Brockmeyer is

immaterial since both decisions hold that "the Hague Convention allows service of

process by international mail" and thus establish the sole requirement of Rule 4(f)(3) that

the means proposed here are not "prohibited by international agreement."

　　　　The three reported decisions in this Circuit that have addressed the issue follow

either the position espoused in Ackermann or Brockmeyer and thus support the relief

requested in this motion.  In Chrysler Corp. v. General Motors Corp., 589 F. Supp. 1182

(D.D.C. 1984), the court considered whether a Japanese corporation could be served in

Japan with a complaint by registered mail, return receipt requested.  Noting the

observation of the D.C. Circuit in F.T.C. v. Compagnie, supra, that service abroad by

registered mail "may thus be viewed as the least intrusive means of service," and the

absence of any formal objection by Japan to Article 10(a) of the Hague Convention, the

court held that "service of the summons and complaint via this method is proper."

Chrysler Corp., 589 F. Supp. at 1206.  Likewise, in I.T. Consultants, Inc. v. The Islamic

Republic of Pakistan, 2000 U.S. Dist. LEXIS 22548 (D.D.C. Sept. 28, 2000), the court

---

[8]　　　Rule 4(f)(2)(c)(ii) allows service by mail provided it is dispatched through the clerk of court and is
not "prohibited by the law of the foreign country" to which the mail is delivered.  Rule 4(f)(3), in contrast,
does not look to the law of the foreign country, but looks only to whether the service method is "prohibited
by international agreement."  See Forum Financial Group v. President and Fellows of Harvard College, 199
F.R.D. 22, 23 n.3 (D. Maine 2001) (the language in Rule 4(f)(2) requiring compliance with the law of the
foreign country "simply does not address Rule 4(f)(3)").  See also infra note 10.

relied on Chrysler in holding that the "Plaintiff is correct in its contention that service by mail was proper under Article 10(a) of the Convention." Id. at *9.[9]

The remaining case in this Circuit, Doe v. State of Israel, 400 F. Supp.2d 86, 2005 U.S. Dist. LEXIS 27471 (D.D.C. Nov. 10, 2005), considered the issue only in dicta. In that case, plaintiffs did not attempt service by mail, but instead, according to the court, served Israeli defendants in their individual capacities "by leaving copies of papers with random employees at the individual defendants' place of employment." Id. at *23. The court questioned whether such "delivery" amounted to "personal service," and held that, even if it did, it was not permitted under Article 10(b) or (c) of the Hague Convention because Israel formally objected to personal service pursuant to those provisions when it ratified the Convention. Id. at *23-24. The Doe court then briefly discussed Article 10(a) of the Convention, indicating that it followed Brockmeyer in interpreting that provision, and then observing, with reference to Brockmeyer, that "[a] court must still look to the internal law of the receiving nation, under which the type of service contemplated by Article 10(a) – if any – must be permitted," and that plaintiffs had not shown that service by mail is permitted under internal Israeli law. Doe, 2005 U.S. Dist. LEXIS at *24-26.

Doe is relevant to this motion as further evidence that the courts in this Circuit follow the Ackermann and Brockmeyer line of authority. Importantly, Doe should not be read to add a new requirement to the Rule 4(f)(3) analysis, i.e., that it is somehow necessary under Rule 4(f)(3) to demonstrate that the internal law of the foreign state

---

[9]    Based on this authority, it would appear that Plaintiff could effectuate service by mail under the authority of Rule 4(f)(1), which permits service by means authorized by the Hague Convention. However, to avoid any question on the issue, Plaintiff is seeking advanced court approval for this method of service under Rule 4(f)(3).

authorizes the proposed alternate method of service. Doe was not decided under Rule

4(f)(3). Rather, by referencing the internal law of the foreign state, Doe was simply

referencing that portion of Brockmeyer that was discussing Rule 4(f)(2) as one of the two

provisions of the Federal Rules of Civil Procedure (the other being Rule 4(f)(3)) that

authorizes service by mail. And, under Rule 4(f)(2), service by mail is only allowed if

not "prohibited by the law of the foreign country." See F.R.C.P. 4(f)(2)(c)(ii);

Brockmeyer, 383 F.3d at 804-05.

In contrast, Rule 4(f)(3) makes no reference to the "law of the foreign country"

and, instead, authorizes any method of service "not prohibited by international

agreement."[10] Forum Financial Group, 199 F.R.D. at 23 n.3 (the language in Rule 4(f)(2)

requiring compliance with the law of the foreign country "simply does not address Rule

4(f)(3)"); Sibley v. Alcan, Inc., 400 F.Supp.2d 1051, 2005 U.S. Dist. LEXIS 28359, at

*13 n.18 (N.D. Ohio Nov. 15, 2005) (holding that the methods of service under Rule 4(f)

are "disjunctive" and, accordingly, that the internal law of the foreign country is not

material to Rule 4(f)(1) or Rule 4(f)(3)). Thus, Doe is relevant to the Rule 4(f)(3)

analysis solely because it recognizes at the very least that the Hague Convention "does

not prohibit" service by mail, and thereby confirms that service by mail is permissible

under Rule 4(f)(3). Doe, 2005 U.S. Dist. LEXIS at *25 (citing Brockmeyer for the

---

[10]    In contrast to other provisions of the Hague Convention which limit service to methods not
"incompatible with the law of the State addressed," e.g., Article 5, the provisions of Article 10 apply
provided "the State of destination does not object." Article 21 of the Hague Convention provides the
procedure by which objections to the methods set forth in Article 10 are to be made, requiring each
contracting state to declare "at the time of the deposit of its instrument of ratification" any "opposition to
the use of methods of . . . articles 8 and 10." See Art. 21 of Hague Convention. The absence of a formal
objection pursuant to Article 21 amounts to consent to the stated methods. See Volkswagenwerk, 486 U.S.
at 699 (noting that a contracting state "also may consent to methods of service within its boundaries other
than a request to its central authority," citing articles 8-11 and 19 of the Convention). Since Italy has not
objected to Article 10(a) pursuant to the procedure set forth in Article 21 (supra note 7 and accompanying
text), Italy's internal law regarding service by mail, which Plaintiff has not attempted to ascertain, is not

proposition that "Article 10(a) does not create an affirmative right to utilize this postal method of service; it simply does not prohibit it.")

Aside from authority in this Circuit, there is an additional reason for this Court to follow the view espoused by Ackermann and Brockmeyer as opposed to the contrary position taken by the Fifth and Eighth Circuits in Nuovo and Bankston.  The former are by far the better reasoned decisions, as they are more consistent with the purpose, logic and structure of the Convention itself, the position taken by the U.S. Department of State, and the understanding of international law experts.  See, e.g., R. Griggs Group Ltd. v. Filanto SPA, 920 F. Supp. 1100 (D. Nev. 1996) (undertaking an exhaustive analysis of the issue); EOI Corp. v. Medical Marketing, Ltd., 172 F.R.D. 133 (D.N.J. 1997) (same).

As these courts recognize, the Nuovo and Bankston line of authority cannot be reconciled with the preamble of the Hague Convention, which states that the Convention applies "in all cases . . . where there is occasion to transmit a judicial or extrajudicial document for service abroad."  See Art. I of Hague Convention (emphasis added).  The Supreme Court has held that "Article I refers to service of process in the technical sense;" that is, "to a formal delivery of documents that is legally sufficient to charge the defendant with notice of the pending action."  Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 700 (U.S. 1988).  The Court has further held that the Convention "applies only to documents transmitted for service abroad" and that the possibility that "the Convention could apply to transmissions abroad that do not culminate in service" was "eliminate[d]" by the final text of Article I.  Id. at 701.  Therefore, by its own preamble, and as interpreted by the Supreme Court, "the Convention is irrelevant to

---

relevant to the analysis of whether, pursuant to Rule 4(f)(3), service by mail is "prohibited by international agreement."

documents which are not transmitted for service, and the Bankston rationale, which reads

10(a) as 'merely providing a method for sending documents after service of process has

been obtained,' has been, in effect, overruled." R. Griggs Group, Ltd., 920 F. Supp. at

1107.

Both Bankston and Nuovo were decided after Volkswagenwerk, yet neither

makes reference to that decision. For that reason, they are of limited persuasive value.

Moreover, the concerns expressed in Nuovo about the potential unreliability of

international mail service, Nuovo, 310 F.3d at 384-85, are not shared in this Circuit. The

United States Court of Appeals for the District of Columbia has commented favorably on

the use of international mail as a means of effectuating service of a summons and

complaint in a foreign state. Compagnie, 636 F.2d at 1313 (observing that "service of

process from the United States into a foreign country by registered mail may thus be

viewed as the least intrusive means of service, i.e., the device which minimizes the

imposition upon the local authorities caused by official U.S. Government action within

the boundaries of a the local state"). The reasoning in Nuovo cannot be reconciled with

Compagnie and, for that additional reason, should be rejected. [11]

Finally, the interpretation in Bankston and Nuovo that Article 10(a) was not

intended to refer to service of process, but only to the "sending" of subsequent judicial

documents, leads to absurd results that could not have been intended by the drafters of the

Convention. If Bankston and Nuovo are correct, then it would be highly impractical to

---

[11]     Neither Bankston nor Nuovo were decided under Rule 4(f)(3) and thus neither holds that service
by mail is expressly prohibited by the Hague Convention. Bankston, moreover, involved service in Japan,
which had objected under Article 21 of the Hague Convention to service under Article 10(b) and (c) of the
Hague Convention. Bankston, 889 F.2d at 174 (noting Japan's formal objection to Article 10(b) and 10(c)
as a basis for the court's holding).   Italy, in contrast, has not declared any objection to any provision of
Article 10.

conduct litigation with defendants located in those foreign states that have objected to the provisions of Article 10(a) since, in such cases, "postal channels" could not be utilized for the delivery of any litigation-related documents. Rather, all such documents would have to be delivered via each country's designated governmental authority under Article 5 of the Convention, which would "pose an undue burden on the judicial process." EOI, 172 F.R.D. at 141-42. Not surprisingly, the Supreme Court in Volkswagenwerk observed that the possibility that "the Convention could apply to transmissions abroad that do not culminate in service" was "eliminate[d]" by the final text of Article I. Volkswagenwerk, 486 U.S. at 701. Article 10(a), therefore, must be interpreted to encompass service of process so as not to render it superfluous. R. Griggs Group, Ltd., 920 F. Supp. at 1107 n.11 ("[t]he reasoning of Ackermann . . . that 10(a) would [be] superfluous unless it referred to sending documents for service rings truer after Volkswagenwerk than it did previously").

## CONCLUSION

Rule 4(f)(3) authorizes a court to permit any method of service "not prohibited" by international agreement. Authority in this Circuit, persuasive authority from other Circuits, and the interpretation of the Hague Convention by the Supreme Court, all demonstrate that the methods of service requested here – by commercial delivery service and ordinary mail – are "not prohibited" by the Hague Convention and, in fact, are

permitted methods under that treaty for service in Italy. For this reason, and the reasons set forth above, the relief requested in this motion should be granted.

Date: January 26, 2006                    Respectfully submitted,


                                          /s/ Jeremy S. Simon
                                          Jeremy S. Simon
                                          D.C. Bar No. 447956
                                          Thompson, Loss & Judge LLP
                                          1919 Pennsylvania Ave., N.W.
                                          Suite M-200
                                          Washington, D.C. 20006
                                          (202) 772-5170 (phone)
                                          (202) 772-5180 (fax)

                                          Counsel for Interpleader Plaintiff