IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**WASHINGTON SQUARE LIMITED**
**PARTNERSHIP, R.L.L.P.**,

       Plaintiff,

vs.

                             CASE NO.: 1:05CV02420
                             JUDGE:  Emmet G. Sullivan
                             DECK TYPE:  General Civil

**GIUSEPPE LENZO**, individually;
**GIUSEPPE LENZO**, as Trustee of
The Virginia Lenzo Trust;
**GIUSEPPE LENZO**, as Trustee of
The Tindaro Lenzo Trust;
**NUNZIATA LENZO ROMANO**;
and **JANE DOE**, as Personal
Representative of Estate of Virginia
Di Perna Lenzo,

       Defendants.

_____/

DATE STAMP:  01/12/2006

### MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT GIUSEPPE LENZO IN RESPONSE TO MOTION OF DEFENDANT NUNZIATA LENZO ROMANO FOR LEAVE TO FILE CROSS-CLAIM

      Defendant, GIUSEPPE LENZO, by and through undersigned counsel, respectfully

submits this Memorandum of Points and Authorities in Opposition to the Motion of NUNZIATA

LENZO ROMANO for Leave to file a Cross-Claim against GIUSEPPE LENZO.  For the

reasons discussed herein, said Motion should be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

      This is an action by Plaintiff, WASHINGTON SQUARE LIMITED

PARTNERSHIP, R.L.L.P., for statutory interpleader under 28 U.S.C. § 1335.  Plaintiff alleges

that it is the lessee under a lease, and that it is in doubt concerning the person entitled to receive a

portion of the rent payments due under such lease, as a result of conflicting claims to such payments by the respective Defendant/stakeholders.

The Complaint in Interpleader alleges that Defendant GIUSEPPE LENZO claims entitlement to the rental payments based on the "record title" to the property in question (as both trustee and beneficiary under the trusts that are the record owner of such property). The Complaint further asserts that Defendant NUNZIATA LENZO ROMANO has also asserted entitlement to such rent payments, based on the contention that a holographic will executed by Virginia Di Perna Lenzo in Italy, on October 3, 2004, was effective to cause whatever interest in such property that Virginia Di Perna Lenzo may have previously transferred to the trusts to revert back to Virginia Di Perna Lenzo.

The Interpleader Complaint also names JANE DOE, as personal representative of the estate of Virginia Di Perna Lenzo, as a Defendant/stakeholder in this case, although the Complaint contains no allegations indicating that JANE DOE has actually asserted any claim to the rental payments at issue in this case. The Interpleader Complaint alleges that the decedent Virginia Di Perna Lenzo was a United States citizen who resided in Italy at the time of her death, and refers to a Petition for Probate of the estate of Virginia Di Perna Lenzo that has been filed in the Probate Court of the District of Columbia, which Petition has not yet been acted upon. (Interpleader Complaint, ¶ 12).

Defendant NUNZIATA LENZO ROMANO has now filed the pending Motion for Leave to File Cross-Claim against GIUSEPPE LENZO. In the proposed Cross-Claim attached to the Motion, she alleges that this Court has subject-matter jurisdiction based upon diversity (¶ 2), and alleges, as the substantive basis for her claim, that she is entitled to the property in dispute based upon her status as a beneficiary of 50% of the estate of Virginia Di Perna Lenzo. This allegation

in turn is based upon language in the purported October 3, 2004 will allegedly executed by the decedent which stated that by execution of such will, the decedent intended to nullify "any and all papers or documents formally signed by me in relation to the property situated in L St. 1742-1744 N.W. Washington, D.C., U.S.A." (Proposed Cross-Claim, ¶¶ 4, 6).

## ARGUMENT

I.  THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS INTERPLEADER ACTION AND THE PROPOSED CROSS-CLAIM INSOFAR AS THE REQUISITE DIVERSITY OF CITIZENSHIP IS ABSENT.

The first reason why the Motion for Leave to File the Cross-Claim should be denied is that neither the Interpleader Complaint in this action nor the proposed Cross-Claim present the requisite diversity of citizenship upon which this Court may properly exercise subject-matter jurisdiction.

Plaintiff in Interpleader in this case has asserted the existence of diversity jurisdiction based upon the suggestion that there is presently a dispute over property, located in the District of Columbia, that satisfies the requirements of diversity jurisdiction. Defendant GIUSEPPE LENZO does not dispute that there is a disagreement over ownership of certain property, and that such property is located in the District of Columbia. However, because the various participants in this dispute do not satisfy the requirements for diversity, this Court cannot properly assume subject-matter jurisdiction over this dispute.

The Complaint in Interpleader in this case suggests (while not explicitly alleging) that the three parties claiming ownership of the disputed property are an Italian national (NUNZIATA LENZO ROMANO is alleged to be a citizen and resident of Italy, in paragraph 11), a citizen of Florida (GIUSEPPE LENZO is alleged to be a United States citizen residing in Florida, in

paragraph 8), and a citizen of the District of Columbia (JANE DOE is sued as personal representative of the estate of Virginia Di Perna Lenzo, not on the basis of any actual previous appointment, but rather on the expectation that some person will be appointed as personal representative in the probate proceedings pending in the District of Columbia probate court, as referenced in paragraph 12). The proposed Cross-Claim does not contain any factual allegations regarding citizenship of NUNZIATA LENZO ROMANO and GIUSEPPE LENZO, but instead simply asserts, in conclusory terms, that diversity jurisdiction exists. (Cross-Claim, ¶ 2).

This Court must decline to exercise subject-matter jurisdiction over either the Interpleader action itself or the proposed Cross-Claim insofar as the requirements for diversity jurisdiction are not satisfied in this case.

Defendant GIUSEPPE LENZO has previously challenged the allegations and implication in the Interpleader Complaint that he is a citizen and resident of Florida, by filing an Affidavit in which he avers that he is a natural born citizen of Italy who, although previously a resident of Florida for a period of time, had moved back to Italy prior to the filing of this action, where he presently resides. Such facts establish that GIUSEPPE LENZO is not, in fact, a citizen of Florida as alleged in the Interpleader Complaint. They also establish that the diversity necessary to jurisdiction in this case is lacking with respect to the proposed Cross-Claim, insofar as it presents a dispute solely between two citizens of Italy.

The undersigned attorney has recently learned that, while the statements made in the previous Affidavit of GIUSEPPE LENZO concerning his Italian citizenship are true, there is a possibility that GIUSEPPE LENZO could be considered as a "dual citizen" of both the United States and Italy, based upon his acquisition of a United States passport during his previous period of residence in the United States. *See,* 22 U.S.C. § 2705; *Magnuson v. Baker,* 911 F.2d 330 (9th

Cir. 1990). However, even if it is assumed *arguendo* that GIUSEPPE LENZO had such "dual citizenship" status, this would not make any difference in terms of this Court's subject-matter jurisdiction. Such jurisdiction would be lacking, by virtue of the undisputed fact that GIUSEPPE LENZO is currently a resident of Italy, which would preclude any finding that he is a "citizen" of Florida, which the Interpleader Complaint implies as a basis for diversity jurisdiction.

The case law is well established that in cases of "dual citizenship," *only the United States citizenship of the person in question is to be considered* for purposes of determining federal-court jurisdiction on the basis of diversity. *See, e.g., Sadat v. Mertes,* 615 F.2d 1176, 1187 (7th Cir. 1980); *Unies v. Kroll & Linstrom,* 957 F.2d 707, 711 (9th Cir. 1992). It is equally settled that, in order to be considered a "citizen of a State" within the meaning of the diversity statute, a natural person must *both* be a citizen of the United States *and* be domiciled within the particular state of which he claims citizenship. *See, Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 828, 109 S. Ct. 2218 (1989); *Robertson v. Cease,* 97 U.S. 646, 648-49, 24 L.Ed. 1057 (1878); *Brown v. Keene,* 8 Pet. 112, 115, 8 L.Ed. 885 (1834); *Scott v. Sandford,* 60 U.S. (19 How.) 393 (1857). In order to be "domiciled" in a particular state, a person must both reside in that state, and regard it as his permanent home. *See, Valentin v. Hospital Bella Vista,* 254 F.3d 358, 366 (1st Cir. 2001); *Kanter v. Warner-Lambert Co.,* 265 F.3d 853 (9th Cir. 2001).

It is undisputed that GIUSEPPE LENZO does not presently reside in Florida, and has not for some time, instead having returned to Italy several years before filing of this case, where he has resided since returning. In light of these facts, GIUSEPPE LENZO is not a "citizen" of the State of Florida, even if he is assumed *arguendo* to be a citizen of the United States, and diversity jurisdiction therefore cannot be established on that basis.

Furthermore, if GIUSEPPE LENZO is considered to be a citizen of the United States, he cannot invoke diversity jurisdiction on the basis of his residence in a foreign country. The law is well established that United States citizens living in foreign countries are essentially "stateless persons" in the sense that they have no right to invoke diversity jurisdiction on either the theory that they are "citizens" of a state where they formerly resided, or the basis that they are "citizens" of the foreign nation in which they presently reside. *See, e.g., Sadat v. Mertes, supra* 615 F.2d at 1180; *Smith v. Carter,* 545 F.2d 909 (5th Cir. 1977); *White v. All America Cable & Radio, Inc.,* 642 F. Supp. 69, 73 n. 5 (D.P.R. 1986); *General Electric Co. v. Cugini,* 640 F. Supp. 113 (D.P.R. 1986); *Van der Schelling v. U.S. News & World Report, Inc.,* 213 F. Supp. 756 (E.D. Pa.), *aff'd per curiam,* 324 F.2d 956, (3d Cir. 1963), *cert. denied,* 377 U.S. 906 (1964); *Bournigal-Mena v. Perez Amador,* No. 92-2677 (SEC), 1995 WL 58036 (D.P.R. Jan. 12, 1995). Furthermore, under the facts of this case, even if it were permissible to treat GIUSEPPE LENZO as a citizen of Italy based on his domicile there, this would not establish diversity jurisdiction because his adversary in this dispute, NUNZIATA LENZO ROMANO, is also a citizen of Italy.

In short, the undisputed fact that GIUSEPPE LENZO was a domiciliary of Italy at the time this action was filed precludes any finding of diversity in this case, as between GIUSEPPE LENZO and NUNZIATA LENZO ROMANO. Such fact precludes a finding that GIUSEPPE LENZO is a citizen of Florida (which is the theory of diversity upon which this case is apparently predicated), regardless of whether or not he is deemed to be a "United States citizen" as alleged by Plaintiff in Interpleader. Alternatively, if he is considered as a citizen of his native Italy, diversity is also lacking since this is the same citizenship claimed by NUNZIATA LENZO ROMANO.

It should also be noted at this point that JANE DOE, the not-yet-appointed personal representative of the estate of Virginia Di Perna Lenzo and the person named as a defendant-claimant in this case, stands in precisely the same situation as GIUSEPPE LENZO insofar as the presence of diversity jurisdiction is concerned. The Complaint in Interpleader alleges, "upon information and belief," that the decedent Virginia Di Perna Lenzo was "a United States citizen" who died while a resident of Italy. (Interpleader Complaint, ¶ 12). For purposes of diversity jurisdiction, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2). Thus, the "citizenship" of JANE DOE for purposes of this action must be considered to be the same as that of the Decedent, Virginia Di Perna Lenzo.

In fact, Virginia Di Perna Lenzo's citizenship status is identical to that of GIUSEPPE LENZO. She was a natural-born citizen of Italy who resided in the United States for a period of time, during which she acquired a United States passport. Assuming that such acquisition is sufficient to give her the status of a "United States citizen" as alleged in the Interpleader Complaint, her domicile in Italy at the time of her death is enough to make her a "stateless" United States citizen whose presence in the case cannot be used as a basis for diversity jurisdiction. Thus, like GIUSEPPE LENZO, Virginia Di Perna Lenzo (and thus Defendant JANE DOE) must be deemed to be either a citizen of Italy or a "stateless" United States citizen at the time of her death, and because either status will not satisfy the requirements of diversity in an action against a citizen of Italy (NUNZIATA LENZO ROMANO), this Court lacks subject-matter jurisdiction.

For the foregoing reasons, diversity jurisdiction is absent in this case. The present dispute is one in which all of the parties claiming entitlement to the disputed property are either

citizens of Italy or "stateless" United States citizens, and therefore this Court lacks jurisdiction to entertain the action. The Motion for leave to file the Cross-Claim should be denied, and the entire Interpleader action dismissed for lack of subject-matter jurisdiction.

II.    ASSUMING *ARGUENDO* THAT DIVERSITY SUBJECT MATTER JURISDICTION OTHERWISE EXISTS, THE EXERCISE OF SUCH JURISDICTION IN THIS CASE IS BARRED BY THE SO-CALLED "PROBATE EXCEPTION" TO FEDERAL JURISDICTION.

Even if the requirements for diversity jurisdiction had been met in this case, it would still be impermissible for this Court to assume subject-matter jurisdiction over this interpleader action and the proposed Cross-Claim, insofar as doing so would inextricably involve the Court in matters that are properly determined by state probate courts rather than federal tribunals.

The central issue raised by the dispute between the various persons claiming entitlement to the rent payments in dispute is whether the alleged execution in Italy by Virginia Di Perna Lenzo on October 3, 2004 of a holographic will constituted a basis for determining that any interest in the disputed property she had previously conveyed away by *inter vivos* transfer was revested in her, and thus her estate. Such issue is one that properly should be decided by a probate court.

In the recent case of *In re Marshall,* 392 F.3d 1118 (9th Cir. 2004), *cert. granted,* 126 S. Ct. 35, 162 L.Ed.2d 933 (2005), the Court outlined the scope of the "probate exception" to federal-court jurisdiction, as applied to a claim alleging tortious interference with a prospective inheritance. After holding that the doctrine applied in "federal question" cases as well as those where jurisdiction was predicated on diversity of citizenship, the Court described the parameters of the principle as follows:

> We have few precedents which address the probate
> exception so we shall consider and borrow from the established

body of case law more thoroughly developed in our sister circuits. In particular, we adopt the framework for analysis laid out by the Second Circuit in *Moser v. Pollin,* 294 F.3d 335, 340 (2d Cir.2002), because it mirrors the explanation of the probate exception as set forth by the Supreme Court in *Markham* [*v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946)].

In *Moser* the Second Circuit engaged in a two part inquiry to determine whether the controversy before it implicated probate matters such that the probate exception to federal jurisdiction applied. 294 F.3d at 340. The first part of the inquiry focuses on the question whether the matter is purely probate in nature, in that the federal court is being asked directly to probate a will or administer an estate. *Id.* As the *Moser* court noted "since few practitioners would be so misdirected as to seek, for example, letters testamentary or letters of administration from a federal judge," the answer to this question is almost always "No." *Id. The second part of the inquiry focuses on whether the matter is probate related by determining whether, by exercising jurisdiction over the matter, the federal court would: (1) interfere with the probate proceedings; (2) assume general jurisdiction of the probate; or (3) assume control over property in custody of the state court. Id.* (citing *Markham,* 326 U.S. at 494, 66 S.Ct. 296). *If the answer to any of these questions is yes, then the probate exception applies.*

. . .

*The reach of the probate exception encompasses* not only direct challenges to a will or trust, but also *questions which would ordinarily be decided by a probate court in determining the validity of the decedent's estate planning instrument.* Such questions include fraud, undue influence upon a testator, and tortious interference with the testator's intent. *See Sutton,* 246 U.S. at 207-08, 38 S.Ct. 254 (holding that in Texas a suit that is essentially a claim to property subject to administration in an estate is not within the jurisdiction of the federal courts); *see also Turja v. Turja,* 118 F.3d 1006, 1008-10 (4th Cir.1997) (holding that the probate exception applies to claims of undue influence and lack of testamentary capacity); *Beren v. Ropfogel,* 24 F.3d 1226, 1228-29 (10th Cir.1994) (declining to hear tort claims of interference with expected inter vivos gifts or testamentary dispositions because "the state probate proceeding afforded plaintiffs an 'adequate and available' remedy in state court to contest [the] will" and "[t]he risk of inconsistent results is obvious"); *Dragan v. Miller,* 679 F.2d 712, 714-17 (7th Cir.1982) (refusing to hear a suit by a decedent's natural heirs against the beneficiaries of a will for intentional interference with the expectancy of an inheritance); *Starr v. Rupp,* 25 Ohio Misc. 224, 421 F.2d 999, 1003-07 (6th Cir.1970) (refusing

to consider claims for breach of fiduciary duty that had already been rejected by the state court).

J. Howard Marshall II expressly declared that it was his intention to give, devise and bequeath all of his property to E. Pierce Marshall, family trusts, and to various charities through the provisions of his 1982 trust, as amended. Virtually all J. Howard Marshall II's property was to be conveyed post mortem to E. Pierce Marshall under the terms of the 1982 trust, as amended, for the express uses and purposes detailed as part of the terms of the written trust. The Texas probate court, as the supervisor of estate administration, was required to sort through all claims regarding distribution of the trust corpus. As the probate judge observed, the parties appearing in Texas were there to resolve:

> the question of what [J. Howard Marshall II] had and what he did with it and whether that was proper or improper. All of that was before the Court. Howard Marshall III complained of every transaction that was done since 1979. Every transaction in connection with his estate plan was before this Court, and all of those transactions were found to be valid by the jury, and the Court is going to find them to be valid.

***The district court's invalidation of the 1982 trust, as amended, was a necessary step supporting the conclusion that Vickie Lynn Marshall was entitled to a money judgment for damages***. The district court specifically determined that the trust was forged and was procured by fraud in direct and irreconcilable conflict with the Texas probate court's judgment entered consistent with the findings of a jury. The district court's finding that J. Howard Marshall II intended to favor Vickie Lynn Marshall with a multi-million dollar gift, devise or bequest of property from his estate stands in direct conflict with the probate court's finding that J. Howard Marshall II did not intend to give, and did not give, Vickie Lynn Marshall any further gift either during his lifetime or post mortem.

The bankruptcy court's judgment was based specifically on Vickie Lynn Marshall's interest in J. Howard Marshall II's estate. In the bankruptcy court Vickie Lynn Marshall's damages were fixed in a dollar sum, less whatever future sum was to be received from the Texas probate proceedings in the Estate of J. Howard Marshall II. The district court's damage award is likewise based on the theory that property that was distributed from the trust estate of J. Howard Marshall II to E. Pierce Marshall should have been distributed to Vickie Lynn Marshall instead.

Although Vickie Lynn Marshall styles her action as a tort action, it is clear that *the exercise of federal jurisdiction would* and, in this case, did *interfere with the Texas probate court proceedings.* Vickie Lynn Marshall argues that her counterclaim is a personal one against E. Pierce Marshall as an individual and not against the estate. She cites *Breaux v. Dilsaver* for the proposition that the probate exception is inapplicable to an action against an administrator of an estate in his personal capacity because the judgment would be satisfied from the defendant's own property and not from the decedent's estate. 254 F.3d 533, 536-37 (5th Cir.2001). *Breaux* did not involve a challenge to the validity of the decedent's will or the distribution of estate property. *Id.* at 537. The personal representative's performance of his duties under the will was the only matter at issue. *Id.* at 535. Here this is not the case. In her brief, Vickie Lynn Marshall argues that she is entitled to nothing either from the 1982 trust, as amended, or the estate itself. Rather, she contends that she is entitled to the amount that J. Howard Marshall II intended to give her, in the form of a separate catch-all trust, but for the improper interference by E. Pierce Marshall. *Regardless of the way in which Vickie Lynn Marshall seeks to characterize her lawsuit, "it is in substance nothing more than a thinly veiled will contest."* *Moser,* 294 F.3d at 340-41. "[M]ere labels--whether an action is styled as a tort action or will contest--are not decisive in our probate-exception analysis." *Storm v. Storm,* 328 F.3d 941, 945 (7th Cir.2003). When the district court entered a judgment in favor of Vickie Lynn Marshall in the form of a damage award based upon what the court thought she should have received from J. Howard Marshall II's estate, the power of the Texas probate court was negated.

The Seventh Circuit, in a case very similar to this one, addressed some of these same issues. In *Storm v. Storm,* the grandson of the decedent filed an action seeking to obtain damages for tortious interference with an inheritance expectancy. 328 F.3d at 942. The court held that while the plaintiff

> phrases his action as one involving tortious interference with his inheritance expectancy, *the practical effect of his lawsuit would be similar to that of a successful will contest*: the terms of the final, allegedly invalid testamentary instruments would essentially be bypassed, while [the plaintiff] would receive, as damages, the assets he would have otherwise been entitled to under what he says are [the decedent's] actual will and trust.

*Id.* at 945. Here the terms, held to be valid by the Texas probate court, of J. Howard Marshall II's 1982 trust, as amended, were

bypassed by the district court when it granted damages "in the amount that J. Howard intended to give her." Although Vickie Lynn Marshall couches her claims in terms of tortious interference, if we were to uphold the decision of the district court we would essentially be allowing Vickie Lynn Marshall a second chance to litigate her claim against the estate of J. Howard Marshall II.

Vickie Lynn Marshall also contends that the probate exception is not applicable because her counterclaim concerns E. Pierce Marshall's interference with an inter vivos gift and that the gift was not a testamentary disposition. We find no support for this argument. ***The probate exception applies not only to contested wills, but also to trusts that direct a post mortem disposition of the trustor's property.*** *See Golden ex rel. Golden v. Golden,* 382 F.3d 348, 359 (3d Cir.2004) (agreeing with *Storm,* 328 F.3d at 947, that "causes of action involving trusts are treated under the probate exception in the same way as actions involving wills"). An inter vivos trust which disposes of property upon the death of the settlor is a recognized will substitute. *See Georges v. Glick,* 856 F.2d 971, 974 n. 2 (7th Cir.1988); *see also Storm,* 328 F.3d at 947.

Vickie Lynn Marshall cannot avoid the probate exception simply by stating that the trust which she claims was to be created for her benefit was an inter vivos trust. Here, the trust put into question by Vickie Lynn Marshall (the 1982 trust, as amended), not only controlled the distribution of J. Howard Marshall II's property during his lifetime, but also provided for the post mortem disposition of trust property. The trust executed by J. Howard Marshall II constituted the centerpiece of his estate plan. By declaring that the trust was invalid, the bankruptcy and district courts directly interfered with the Texas probate court's administration of the decedent's estate.

. . . .

We agree with the contention of E. Pierce Marshall that ***the probate exception to federal court jurisdiction applies in this case because Vickie Lynn Marshall's claims were simply a disguised attack on J. Howard Marshall II's 1982 trust,*** as amended, ***and on the postmortem disposition of his property as provided in the trust.***

392 F.3d at 1132-36 (emphasis added, footnotes omitted).

The probate exception applies in the instant case for the same reason that it was

applicable in *Marshall*, *supra*, and in the *Storm* case cited therein. The claims of NUNZIATA

LENZO ROMANO in this case are merely "disguised attacks" on the overall scheme for

testamentary disposition of the property of Virginia Di Perna Lenzo, as established by her 1995

will and the 2003 creation of the *inter vivos* trust and subsequent transfer to the trust of her

interest in the disputed property.  For this Court to assume subject-matter jurisdiction over this

claim would require the Court to interfere in matters that properly should be decided by the

District of Columbia probate court.

It should be noted that there is no inconsistency between the terms of the 1995 will

executed by Virginia Di Perna Lenzo and the subsequent creation of the *inter vivos* trust in 2003

and conveyance of Virginia's interest in the lease to the trust.  The status of the 1995 will as the

Last Will and Testament of Virginia Di Perna Lenzo is not precluded by recognition of the

validity of the subsequent creation of the trust and conveyance thereto of Virginia's interest in

the lease.  However, the claims made by NUNZIATA LENZO ROMANO in this case clearly

challenge the decedent's testamentary scheme, as established by the 1995 will and the trusts

created in 2003.  Insofar as the position of NUNZIATA LENZO ROMANO constitutes a direct

attack upon the testamentary scheme established by Virginia Di Perna Lenzo,  this action should

be dismissed on the basis of the probate exception, even if it is assumed that the general

requirements for diversity jurisdiction have been satisfied.

III.    ASSUMING *ARGUENDO* THAT THE REQUIREMENTS
FOR DIVERSITY JURISDICTION HAVE BEEN
SATISFIED, AND THAT THE EXERCISE OF SUCH
JURISDICTION IS NOT PRECLUDED BY THE
"PROBATE EXCEPTION," THIS COURT
NEVERTHELESS SHOULD ABSTAIN FROM
ASSUMING JURISDICTION OVER THIS CASE, IN
VIEW OF THE AVAILABILITY OF ALTERNATIVE
AND ADEQUATE REMEDIES.

Even if it is assumed *arguendo* that the exercise of subject-matter jurisdiction by this

Court in the instant case is not absolutely barred by the lack of the requisite diversity and/or the

"probate exception," this Court nevertheless has discretion to abstain from exercising such

jurisdiction, and the instant case presents a situation in which such discretion should be invoked.

In *Koehring Co. v. Hyde Construction Co.,* 424 F.2d 1200 (7th Cir. 1970), the court held

that it was proper for a district court to abstain from exercising jurisdiction in a statutory

interpleader action, even though the minimal requirements for diversity jurisdiction had been

met, where the plaintiff had alternative remedies available under state law to determine the

priorities of the allegedly conflicting claims that had been made upon the plaintiff.  The court

said:

> [W]e agree with the remarks of Professor Moore, who has stated:
>
>> '* * * It should also be within the discretion of the interpleader court, sitting as a court of equity, to decline to exercise jurisdiction when there is an action pending elsewhere wherein the liability of the stakeholder to all claimants may be fairly and conclusively determined. In such a case, the fear of multiple vexation and inconsistent liability which serves as the premise for interpleader relief may be absent; this, in addition to the prior lodging of jurisdiction in another tribunal, may properly convince the interpleader court that it is both safe and prudent to stay its hand. If these conditions are met, there is no reason to believe that the interpleader statute compels the exercise of jurisdiction, thus depriving the court of the discretion traditionally exercised to deny equitable relief when there is another adequate remedy 'at law.' There is strong support for this proposition in the federal cases.'
>>
>> Considering the ample procedures available for their protection in Mississippi, we perceive no equity in the position of the appellants. Moreover, to encourage a practice of denying the state courts of general jurisdiction the right to enforce their own judgments through the device of federal interpleader would be most disruptive of a healthy federalism. There are strong reasons for the federal courts to relinquish their jurisdiction in favor of the state courts, where the exercise of jurisdiction involves an unnecessary interference by injunction with the lawful action of state officers. Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841

424 F.2d at 1204-05 (footnote and citations omitted). *See also, Commerce & Industry Ins. Co. v. Cablewave Ltd.,* 412 F. Supp. 204, 207 (S.D.N.Y. 1976) (interpleader relief may be denied if there is an adequate remedy elsewhere); *Consolidation Coal Co. v. Bailey,* 308 F. Supp. 1251, 1253 (N.D. W. Va. 1970) ("when it appears that a party has an adequate remedy at law, interpleader, being an equitable remedy, will be denied"); *Truck-A-Tune, Inc. v. Re,* 23 F.3d 60 (2d Cir. 1994);

The instant case presents an appropriate occasion for abstention. The central issue raised by the Complaint in Interpleader in this case – whether the alleged holographic will dated October 3, 2004 was effective to re-vest in Virginia Di Perna Lenzo the right to receive the rental payments in dispute – can and should be litigated in connection with the probate of the estate of such Decedent. Plaintiff should not be permitted to make a federal case out of what is essentially a will contest. This Court therefore should abstain from exercising jurisdiction, even if it is assumed the Court has the power to do so.

IV.    ASSUMING THAT SUBJECT-MATTER JURISDICTION
       EXISTS AND ABSTENTION IS NOT APPROPRIATE,
       THIS ACTION NEVERTHELESS SHOULD BE STAYED
       OR ABATED PENDING RESOLUTION OF ONGOING
       PROBATE PROCEEDINGS IN THE DISTRICT OF
       COLUMBIA PROBATE COURT.

Assuming that the Court is of the opinion that jurisdiction exists and abstention is not proper, the Court nevertheless should stay or abate this action pending completion of the probate proceedings in the District of Columbia Probate Court, which proceedings were instituted prior to the filing of this action, and which involve issues similar and/or related to the issues raised by the pleadings in this case.

The law is well established that it is appropriate for a United States District Court to stay or abate proceedings brought before it, on the ground that there are alternative proceedings

pending in state court between the same parties in which the same or related issues have been

raised. As stated in *Ystueta v. Parris,* 486 F. Supp. 127 (N.D. Ga. 1980):

> Despite early decisions to the contrary, Kline v. Burke
> Constr. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922), it is
> now generally recognized that a district court does have the power
> to grant a discretionary stay of a federal action which is
> substantially duplicated by a pending state action between the
> same parties. Landis v. North American Co., 299 U.S. 248, 57
> S.Ct. 163, 81 L.Ed. 153 (1936); Glen Oaks Utilities, Inc. v.
> Houston, 280 F.2d 330 (5th Cir. 1960); Jackson Brewing Co. v.
> Clarke, 303 F.2d 844 (5th Cir. 1962), cert. den., 371 U.S. 891, 83
> S.Ct. 190, 9 L.Ed.2d 124,reh. den., 371 U.S. 936, 83 S.Ct. 305, 9
> L.Ed.2d 272; Thompson v. Boyle, 417 F.2d 1041 (5th Cir. 1969);
> cert. den., 397 U.S. 972, 90 S.Ct. 1088, 25 L.Ed.2d 266. Crawford
> v. Seaboard Coast Line R. Co., 286 F.Supp. 556 (S.D.Ga.1968);
> see generally "Stay of Action in Federal Court Until Determination
> of Similar Action in State Court", 5 A.L.R.Fed. 10 (1970).

486 F. Supp. at 128. *See also, Mahaffey v. Bechtel Assocs. Prof'l Corp., D.C.,* 226 U.S. App.

D.C. 7, 699 F.2d 545, 546 (D.C. Cir. 1983) ("When federal jurisdiction predicated upon diversity

of citizenship is properly asserted, the prior commencement of an action in a local court may

justify abatement of the federal action").

   The circumstances of the instant case counsel in favor of such a stay or abatement, even

if this Court is not inclined to refrain from exercising subject-matter jurisdiction outright. The

state probate proceeding was commenced prior to this interpleader action, and thus is entitled to

preference under the "first in time" principle. Also, considerations of federalism and judicial

economy both favor allowing the dispute between these parties to be determined in the probate

court. There is no "federal question" presented in this case; to the contrary, the issue is

essentially a "will contest" disguised as a dispute over entitlement to rent payments due under a

lease. The issues presented are of the type within the specialized competence and jurisdiction of

the District of Columbia probate court, and this Court should, at the very least, enter an order

staying or abating consideration of this interpleader proceeding, and the Cross-Claim proposed to

be filed therein by NUNZIATA LENZO ROMANO, until the probate case may be resolved.

V.    THE PROPOSED CROSS-CLAIM FAILS TO STATE A
CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In addition to the absence of subject-matter jurisdiction over the interpleader action in its

entirety and the proposed Cross-Claim in particular, another reason why the requested leave to

file the proposed Cross-Claim should be denied is that said Cross-Claim fails to state a claim

upon which relief can be granted under substantive law.

The case law indicates that the question of whether a proposed cross-claim states a valid

claim under applicable substantive law is a proper consideration in ruling on a motion for leave

to file such cross-claim.  *See, Sherlee Land v. Commonwealth United Corp.,* No. 69 Civ. 3726,

1973 WL 365 (S.D.N.Y. Jan. 16, 1973). An examination of the Cross-Claim which NUNZIATA

LENZO ROMANO has proposed to file in this case discloses that it suffers from such

deficiency.

The only facts alleged in the proposed Cross-Claim which might provide the basis for any

relief in favor of NUNZIATA LENZO ROMANO are the following:  (1) she claims a right to

50% of the property in question by virtue of her status as devisee of 50% of the estate of Virginia

Di Perna Lenzo, who died testate (Cross-Claim, ¶ 4); (2) the document allegedly executed by

Virginia Di Perna Lenzo on October 3, 2004 provided that "[a]ny and all papers or documents

formally signed by me in relation to the property situated in L St. 1742-1744 N.W. Washington,

D.C., U.S.A., should be considered null and void." (Cross-Claim, ¶ 6).  These are the only two

facts alleged in the Cross-Claim that identify in any way the basis upon which NUNZIATA

LENZO ROMANO claims entitlement to the property in dispute in this case.  All other

allegations in the proposed Cross-Claim simply describe the existence of the dispute between the

parties, and note that GIUSEPPE LENZO has, since the date of alleged execution of the October 3, 2004 document, received all of the rent payments in dispute, contrary to the position of NUNZIATA LENZO ROMANO that she is entitled to 50% of such payments.

The facts alleged in the Cross-Claim simply do not provide any basis for concluding that NUNZIATA LENZO ROMANO has any claim under substantive law to the disputed property. There are no facts set forth in the Cross-Claim which describe how the decedent's alleged execution of the October 3, 2004 document could have any effect upon NUNZIATA LENZO ROMANO's right to claim such property, as a devisee of 50% of the decedent's estate. The four corners of the proposed Cross-Claim do not reveal any such relationship, and the proposed Cross-Claim therefore fails to state a claim upon which relief can be granted.

Furthermore, even if the Cross-Claim did identify to a sufficient degree the relationship between the alleged action by the decedent and the claims made by NUNZIATA LENZO ROMANO, the proposed Cross-Claim is simply untenable under controlling substantive law. An examination of the Complaint in Interpleader discloses facts (not stated in the proposed Cross-Claim itself) which assist in understanding the rationale upon which the claims of NUNZIATA LENZO ROMANO are predicated. However, such enlightenment does not support her case; to the contrary, it simply reveals, quite clearly, the insufficiency of her claim under substantive law.

The Complaint in Interpleader helps to explain the nature of NUNZIATA LENZO ROMANO's claims, by referring to relevant facts not mentioned in the proposed Cross-Claim. For instance, it refers to the fact that on April 15, 2003, the decedent Virginia Di Perna Lenzo created a trust, of which GIUSEPPE LENZO was trustee and sole beneficiary, and that she subsequently on May 13, 2003 executed a deed conveying her interests in the disputed property to such trust. Such allegations help to explain why NUNZIATA LENZO ROMANO contends

that the alleged execution of the October 3, 2004 document provides her with a claim to the disputed property. However, insofar as such allegations are not contained in the proposed Cross-Claim itself, it is submitted that such allegations should not be considered for purposes of ruling on the sufficiency of the proposed Cross-Claim to state a valid cause of action.

Even if it is assumed *arguendo* that the allegations in the Complaint in Interpleader may properly be considered in determining whether the proposed Cross-Claim states a valid claim under applicable law, however, the proposed Cross-Claim still fails to state any basis upon which relief can be granted. The language contained in the alleged October 3, 2004 document, which expresses an intent to revoke "any documents signed by [the decedent] in relation to [the property in dispute]" cannot reasonably be interpreted to refer to the decedent's initial creation of the trust on April 15, 2003, because at the time the decedent "executed" the trust document, such document did not "refer" to the disputed property. It was simply a document intended to create a trust, and at that time, the decedent's interest in the disputed property *was not* included in the trust *res,* instead being conveyed by a subsequent deed from the decedent to the trust dated May 13, 2003. Thus, the language in the October 3, 2004 document cannot fairly be construed as revoking the trust itself, because the trust document was not a document "relating to" the disputed property.

The May 13, 2003 deed by which the decedent subsequently conveyed her interest in the subject property to the trust can more fairly be read as within the scope of the decedent's stated intention to revoke previous documents "relating to" the property in dispute. However, although the decedent may have *intended* for the alleged October 3, 2004 document to revoke the previous deed by which she had conveyed her interest in the disputed property to the trust, such intention simply cannot be given effect in accordance with the law. Case law establishes that a deed that

is valid in all significant respects, and which has been properly delivered to the grantee during the grantor's lifetime, cannot be revoked by a declaration of intent to do so by the grantor in a will executed subsequent to the deed. *See, Ragland v. Kelner,* 148 Tex. 132, 221 S.W.2d 357 (1949). Such a subsequent declaration of intent amounts to little more than a change of mind on the part of the grantor, which cannot be given effect because the grantor, having already made a valid conveyance of the property, no longer has title. Recognizing such a change of mind by the grantor as a valid basis for revoking deeds would wreak havoc with record titles to real property and disrupt business activities and relationships to an unacceptable extent.

For the foregoing reasons, the proposed Cross-Claim fails to state a valid basis upon which relief can be granted under applicable law. This constitutes an additional reason why the Motion for Leave to File the Cross-Claim should be denied.

## CONCLUSION

For the reasons discussed above, the Motion of NUNZIATA LENZO ROMANO for leave to file Cross-Claim should be denied, and this action should be dismissed for lack of subject-matter jurisdiction.

Respectfully submitted,

_____/s/_____
Joseph DeGance, *Pro Hac Vice*
3471 N. Federal Highway
Suite 300
Fort Lauderdale, Florida 33306
Tel.:    (954) 566-1531
Fax:    (954) 566-2382
*Attorney for Defendant*
*GIUSEPPE LENZO*

- 20 -

_____/s/_____
Michael A. Dymersky
D.C. Bar No. 370593
FUREY, DOOLAN & ABELL, LLP
8401 Connecticut Avenue
Suite 1100
Chevy Chase, Maryland  20815
Tel.:    (301) 652-6880
Fax:    (301) 652-8972
*Local Counsel for Defendant*
*GIUSEPPE LENZO*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20rd day of March 2006, copies of the foregoing were

served by filing with the Court's CM/ECF System upon the following: Jeremy S. Simon, Esquire,

Thompson, Loss & Judge LLP, 1919 Pennsylvania Avenue, N.W., Suite M-200, Washington,

D.C., 20006, and Michael J. Pollack, Esquire, Cohen & Buckley, LLP, 1301 York Road, Suite

706, Baltimore, MD 21093, and Babak Movahedi, Esquire, 1700 Q Street N.W., Washington,

D.C., 20009.


_____/s/_____
Michael A. Dymersky