## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ) | |
| WASHINGTON SQUARE LIMITED ) | |
| PARTNERSHIP, R.L.L.P. ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civ. Action No. 05-2420 (EGS) |
| v. ) | |
| ) | |
| GIUSEPPE LENZO, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF'S OPPOSITION TO MOTION
## TO DISMISS AND/OR STAY OF GIUSEPPE LENZO

Plaintiff, Washington Square Limited Partnership, R.L.L.P. (hereinafter, "Plaintiff" or "Washington Square"), submits this memorandum in opposition to the motion to dismiss of defendant Giuseppe Lenzo.

## INTRODUCTION

This is an action for statutory interpleader under 28 U.S.C. § 1335 as set forth more fully in Plaintiff's Complaint of Interpleader filed on December 16, 2005. Plaintiff initiated this action because it could not determine which of the claimants to pay the rent due on January 1, 2006 (and which again will be due and owing on July 1, 2006) under a ground lease for its office building in Washington, D.C. The ground lease parcel at issue involves the one-third interest formerly held of record in the name of Virginia Di Perna Lenzo, who died on February 26, 2005. However, several years prior to her death, and specifically by Deed dated May 13, 2003, Virginia Di Perna Lenzo conveyed legal title to this interest to her son, Giuseppe Lenzo, in his capacity as trustee of two Trusts, the Virginia Lenzo Trust and the Tindaro Lenzo Trust.

By letter dated December 6, 2005, Defendant Nunziata Lenzo Romano, through counsel, advised Plaintiff of her position that these two Trusts had been revoked by Virginia Lenzo in a handwritten document dated October 3, 2004, and that Plaintiff should cease making the rental payments to the referenced Trusts.  Conversely, Giuseppe Lenzo, as Trustee of the referenced Trusts and the holder of legal title to the referenced ground lease parcel, expected the rental payments to him to continue.  Plaintiff, as a neutral party facing competing demands for the same rental payment, properly brought this litigation to protect itself from the risk of multiple liability on its rent obligation.

Mr. Lenzo now challenges the jurisdiction of this court to hear this action.  Under well settled law, the focus of the jurisdictional inquiry is on the applicable facts as they existed on December 16, 2005, which is the filing date of this lawsuit.  Mr. Lenzo's argument fails, as shown below, because, on the one hand, it focuses on alleged events that pre-date this lawsuit in arguing against diversity jurisdiction and, on the other hand, it focuses on events that have yet to occur in arguing for the application of the so-called "probate exception."  When the analysis is properly focused on the situation as it existed on December 16, 2005, it is abundantly clear that neither argument has any merit.

### Mr. Lenzo's Challenge To Diversity Jurisdiction

This court's jurisdiction is premised on diversity jurisdiction as between defendant Giuseppe Lenzo, who is alleged as of the date of the lawsuit to be a United States citizen domiciled in Florida, and his sister, Nunziata Lenzo Romano, who is alleged to be an Italian citizen domiciled in Italy (the allegations as to Ms. Romano have been admitted by her in her answer to the complaint).  Section 1335 is unique in that it looks to the citizenship of the

claimants to the interpleaded funds and requires only minimal diversity among them to establish federal court jurisdiction.

Mr. Lenzo initially challenged diversity jurisdiction on the ground that he was an Italian citizen and thus not diverse to his sister. Mr. Lenzo himself has now acknowledged that he is, in fact, a United States citizen. Under settled law, that citizenship takes precedence for diversity purposes over any dual citizenship that he may maintain by virtue of having been born in Italy. Having been forced to concede his United States citizenship, Mr. Lenzo now contends that he was not domiciled in Florida as of the filing date of the lawsuit as alleged in the Complaint. However, the objective factors upon which courts rely in assessing domicile create a presumption of Florida domicile that Mr. Lenzo cannot overcome. Among other things, Mr. Lenzo is the owner of real property in Florida (i.e., his condominium at 8925 Collins Avenue), registered to vote in Florida on November 24, 2004 under that address, designated that condominium as his "homestead" in February 2005, registered an automobile in Florida in April 2005 under that address and, as of the date of this lawsuit, maintained a current Florida driver's license listing that address as his residence.

Against this overwhelming evidence of a Florida domicile during the relevant time period, Mr. Lenzo offers only self-serving assertions that (a) omit any specific reference to Mr. Lenzo's status in the year 2005; (b) identify no objective indicia of an Italian domicile during any period (such as, for instance, property ownership and the like); and (c) are deliberately vague and at times self-contradictory. This "non-evidence" is insufficient to overcome the presumption of a Florida domicile in the year 2005 established by the objective factors identified above.

**Mr. Lenzo's Assertions Regarding The So-Called Probate Exception**

Mr. Lenzo's invocation of the so-called "probate exception" fails for several reasons. First, in making this argument, Mr. Lenzo mischaracterizes the relevance to this litigation of the handwritten document of October 3, 2004, discussed above. Contrary to Mr. Lenzo's assertions, that document is not relevant to this action as a testamentary instrument. As Mr. Lenzo well knows, and as alleged in the Complaint, that 2004 document has not been submitted for probate in the District of Columbia. Ms. Romano does not rely on that document as a testamentary instrument (and, indeed, has contended that it is invalid as such under local law), but simply as a writing that, in her view, is sufficient under the terms of the applicable trust agreement(s) to have revoked those trusts and the underlying property transfers to those trusts, prior to Virginia Lenzo's death. In short, the trust revocation issue and corresponding title dispute involve contract and trust law questions, and not probate questions.

Second, the probate exception presumes the existence of a pending, parallel action in probate court. However, at the time this lawsuit was filed, the only "proceeding" in the Probate Division of Superior Court (there is no "probate court" in D.C.) involved a petition for admission to probate of a will of Virginia Lenzo dated July 3, 1995. As alleged in the Complaint, that petition had not been acted upon as of the filing date of this lawsuit and no personal representative had been appointed. Under the law of the District of Columbia, the appointment of a personal representative, which has yet to occur, is a prerequisite to probate. Accordingly, there was no pending probate at the time this lawsuit was filed, and certainly no parallel proceeding in the Probate Division involving the same claims and parties to this action.

Third, this interpleader action is not confined to resolving the competing claims of the defendants but, in the first instance, addresses the rights and interests of the plaintiff, who is

neutral to the underlying dispute. Under the settled rule that jurisdiction is determined at the outset of a case, any jurisdictional analysis necessarily must focus on this "first stage" of the interpleader action, that is, the stage in which the neutral party requests the court to take possession of funds in its custody so as to discharge the neutral party from any further obligation with respect to such funds or any competing claims to them. The equitable power to award such relief is a recognized power belonging to the federal court and is not reserved exclusively, if at all, for probate courts. Accordingly, an interpleader action is, in the first instance, outside the province of probate court jurisdiction and thus is not susceptible to a jurisdictional challenge under the probate exception.

Fourth, the nature of the competing claims to the interpleaded funds, which constitutes the "second stage" of an interpleader action, does not implicate matters exclusively reserved for the Probate Division. The claims are in the nature of a quiet title action, or a trust revocation action, which are within the general jurisdiction of the civil division of the Superior Court and, by extension, subject to the jurisdiction of this court assuming diversity can be established. Mr. Lenzo's contrary suggestion mischaracterizes the nature of this action and the role of the Probate Division within the Superior Court.

Finally, in the absence of any pending parallel proceeding in the Probate Division, there is no basis for this Court to abstain from or stay this action. This action was brought following a letter dated December 6, 2005, from counsel for Ms. Romano, which itself was preceded by discussions with counsel, over the appropriate manner for Washington Square to protect its interests with respect to the competing claims to rent payments that were then coming due on January 1, 2006. Ms. Romano consented to this action, while Mr. Lenzo took no position. Neither had initiated litigation against the other, or against Washington Square, as of the date

of this lawsuit.  As there was no pending parallel proceeding in state court at the time this

action was filed, there is no basis for this Court to abstain from or stay this matter.

## ARGUMENT

### I.    There Is Diversity Jurisdiction

The diversity required under 28 U.S.C. § 1335 is minimal diversity; that is, the court

looks only to the diversity of the adverse claimants and requires only that, as here, two of the

claimants be diverse under 28 U.S.C. § 1332(a).  See, e.g., Star Ins. Co. v. Cedar Valley

Express, LLC, 273 F. Supp.2d 38, 41 (D.D.C. 2002) ("jurisdiction is proper . . . so long as at

least two of the claimants are citizens of different states"); 28 U.S.C. § 1335(a)(1) (conferring

jurisdiction provided "two or more adverse claimants" are of "diverse citizenship as defined in

subsection (a) or (d) of section 1332").  Minimal diversity has been alleged in this matter since

at least one claimant, Giuseppe Lenzo, is a United States citizen, domiciled in Florida as of the

filing date of this action, whereas at least one other claimant, Nunziata Lenzo Romano, was as

of the filing date a citizen of a foreign country.  See 28 U.S.C. § 1332(a)(2).

### A.    Mr. Lenzo Is Considered A United States Citizen For Diversity Purposes.

Mr. Lenzo initially contended in his motion that diversity was lacking because he was

not a United States citizen, but was an Italian citizen and thus not of diverse citizenship with

his sister.  Mr. Lenzo has since confirmed in a supplemental affidavit that he is, in fact, a

United States citizen holding dual citizenship in Italy, where he was born.  (Lenzo Suppl. Aff.

¶ 2, stating that "Affiant is also a citizen of the United States since 1966).

In situations involving dual citizenship, the individual's American citizenship has

priority.  Action S.A. v. Marc Rich & Co., 951 F.2d 504, 507 (2d Cir. 1991) ("In matters of

diversity jurisdiction, American citizenship will determine diversity."); see also Coury v. Prot,

85 F.3d 244, 250 (5th Cir. 1996) (citing cases).  Accordingly, Mr. Lenzo's citizenship, that of

the United States, is diverse to that of his sister, who holds only Italian citizenship.

**B.      Mr. Lenzo Maintained A Florida Domicile As Of The Date Of This Lawsuit.**

Having been forced to acknowledge his United States citizenship, Mr. Lenzo tries to

salvage his position by arguing that, despite the overwhelming public record to the contrary, he

does not maintain a Florida domicile, or a domicile in any other state.  However, as shown

below, all of the recognized indicia of domiciliary status establish Florida as Mr. Lenzo's

domicile in the year 2005, which is the year this lawsuit was filed, and the only year relevant to

the analysis.  <u>Delfani v. United States Capitol Guide Bd.</u>, 2005 U.S. Dist. LEXIS 5661, at *6

(D.D.C. 2005) ("It is a firmly established rule that subject matter jurisdiction is tested as of the

time of the filing of the complaint.").  Mr. Lenzo's self-serving statements, and those of the

other affiants, cannot overcome the presumption of Florida domicile established by this

undisputed objective evidence.

**1.      Objective Indicia of Domicile Establish Florida as Mr. Lenzo's Domicile  At The Relevant Time.**

To determine a party's domicile, courts look to "'a number of generally accepted

indicia of domiciliary status,' including sworn declaration of domicile; voting registration;

state driver's license; ownership of personal property in a given state; bank accounts and club

membership." <u>Naegele v. Albers</u>, 355 F. Supp.2d 129, 135 (D.D.C. 2005) (quoting, <u>Wagshal</u>

<u>v. Rigler</u>, 947 F. Supp. 10, 13 (D.D.C. 1996)).  When, as here, a party demonstrates that such

objective factors substantially favor a particular state, "the party is entitled to a presumption

that it has established a domicile." <u>Id.</u>  That presumption cannot be overcome by unsupported

allegations of intent, such as the assertions in Mr. Lenzo's proffered affidavits submitted in

support of his motion. <u>Lew v. Moss</u>, 797 F.2d 747, 750 (9th Cir. 1986) ("The courts have also stated that domicile is evaluated in terms of 'objective facts,' and that 'statements of intent are entitled to little weight when in conflict with facts.'"); <u>National Artists Management Co. v. Weaving</u>, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991) ("Although intent is crucial to domicile, mere subjective statements of affiliation with a particular state or of an intent to make it one's home, of course cannot suffice for a finding of state citizenship if such statements are belied by objective indicia of actual residence and intent.")

### a.    Mr. Lenzo Claimed Florida As His Homestead In 2005.

The undisputed public record establishes that Mr. Lenzo claimed Florida as his "homestead" in February 2005 and maintained that status as of the filing date of this lawsuit. Specifically, the Property Appraiser's Office for Miami-Dade County reported the following in response to a subpoena issued by Washington Square:

> [O]ur records reveal Mr. Lenzo filed and signed a 2005 tax year homestead application on February 3, 2005, with a move in date reflecting October 1, 2004 on the above described parcel [8925 Collins Avenue]. The 2006-homestead application . . . in reference to **section Box G** noted on application – is the same written language in the 2005 application filed.

(Simon Decl. Ex. A)  The referenced "Box G" of the application requires the property owner to attest, under penalty of perjury, that he was then a "permanent resident of the State of Florida." (Simon Decl. Ex. B)

The Property Appraiser's office likewise confirmed that Mr. Lenzo was granted the requested homestead status for the year 2005 and did not provide any notification of any change in status during that year.  (Simon Decl. Ex. A)  Florida law imposes a duty on the property owner to notify the Property Appraiser "whenever the use of the property or the status or condition of the owner changes, so as to change the exempt status of the property."  (Simon

Decl. Ex. C)  Mr. Lenzo had not cancelled his Florida homestead status as of the date this

lawsuit was filed, confirming that Mr. Lenzo retained a Florida domicile as of that date.

> **b.**   **Mr. Lenzo Maintained A Florida's Driver's License, Florida Automobile Registration, and Florida Voter Registration As Of The Filing Date Of This Lawsuit.**

The homestead application requires not only a signed application attesting to

"permanent" residence in Florida, but also requires applicants to furnish their social security

number as well as supporting proof of Florida property ownership and two forms of proof of

Florida residency (such as, for instance, a driver's license, voter registration card, or

automobile registration).  (Simon Decl. Ex. C)  These requirements are needed to "help ensure

that only those citizens entitled to the exemption will receive it;" that is, "permanent residents"

of Florida and not merely vacationers:

> The purpose of the law is to provide a means to ensure that the homestead exemption is fairly and equitably applied to all Florida citizens.  The large number of vacation homes and visitors in Florida makes it difficult to determine whether an application meets statutory requirements.  The use of the social security number will help ensure that only those citizens entitled to the exemption will receive it.

(Simon Decl. Ex. C).

In the year 2005, Mr. Lenzo met the statutory requirements for this exemption.  Mr.

Lenzo maintained a current Florida driver's license, bearing the Collins Avenue address.

(Simon Decl. Ex. E, at 3-4)  Mr. Lenzo also was then a registered voter in Florida, and his

voter registration likewise bears the Collins Avenue address.  According to the records of the

Supervisor of Elections for Miami-Dade County, Mr. Lenzo became a registered voter in

Miami-Dade County on November 24, 2004 and maintained that registration as of the date of

this lawsuit.  (Simon Decl. Ex. D)  The public record also reflects that Mr. Lenzo registered

title to an automobile in Florida on April 25, 2005 under his Collins Avenue address.[1]  (Simon Decl. Ex. E, at 7-8)

> **c.    Mr. Lenzo's Present Attempts To "Undo" This Public Record Simply Confirm His Florida Domicile As Of The Filing Date Of This Lawsuit.**

Following receipt of the instant motion, Plaintiff advised Mr. Lenzo, through his counsel, of the above information from the public record by letter dated February 28, 2006. (Simon Decl. Ex. F)  That letter concluded with the request that counsel either confirm or deny the referenced information.   Mr. Lenzo did not deny this record.   Unable to dispute this public record, Mr. Lenzo instead has offered a dubious explanation for the claimed homestead exemption and otherwise has tried to "undo" the public record.

In his supplemental affidavit dated March 6, 2006, Mr. Lenzo takes the untenable position that homestead status for his property was claimed by his wife, under his name but without his knowledge.   However, as already noted, the homestead application requires not only a signed application, made under penalty of perjury, but also supporting documentation of Florida residency (such as, for instance, a driver's license, voter registration card, or automobile registration) that would have been exclusively in Mr. Lenzo's possession.   It is simply not plausible that a homestead application for Mr. Lenzo's *own* property, and requiring supporting proof in Mr. Lenzo's possession, could be completed and filed without Mr. Lenzo's knowledge.

Mr. Lenzo's claimed ignorance of his property's homestead status is, in any event, irrelevant for at least two reasons.   First, if Mr. Lenzo's wife did in fact file for homestead

---

[1]    The co-registrant on the automobile is Patrizia Zanetti Lenzo, who Plaintiff understands to be Mr. Lenzo's wife.  The address on the registration for Mrs. Lenzo is 2260 NE 67th Street Apartment 1731, Fort Lauderdale, Florida.  Plaintiff does not understand Mr. and Mrs. Lenzo to be separated and assumes that this address is the address that was then reflected on Mrs. Lenzo's driver's license at the time the car was purchased.

status in her husband's name, as Mr. Lenzo contends, then the application at least reflects her view as to *their* Florida domicile, which is afforded equal weight. Lew v. Moss, 797 F.2d 747, 752 (9th Cir. 1986) (residence of wife a significant factor in determining husband's domicile); National Artists Management Co. v. Weaving, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991) ("the residence of a married person's spouse and children (if the couple has not separated) is given considerable weight.")  Second, the badges of Florida residence that Mr. Lenzo clearly maintained (i.e., voter registration, automobile registration, driver's license), and which enabled the homestead application to be filed and accepted, are the precise types of objective criteria on which courts presume domicile.

Equally unavailing are Mr. Lenzo's efforts at present to undo this public record.  On March 2, 2006, after receipt of Plaintiff's letter of February 28, 2006, Mr. Lenzo revoked his Florida voter registration and, on March 3, 2006, Mr. Lenzo cancelled the homestead exemption on the Collins Avenue property.  (Simon Decl. Ex. A and D)  These acts, coming three months after the filing of the complaint in this matter, have no bearing on Mr. Lenzo's domicile as of the date this action was filed.  Wolde-Meskel v. Vocational Instruction Project Community Servs., Inc., 166 F.3d 59, 62 (2d Cir. 1999) ("[I]t is 'the well-settled rule that a federal court does not lose jurisdiction over a diversity action which was well founded at the outset even though one of the parties may later change domicile . . . . Federal diversity jurisdiction is not lost by post-filing events that change or disturb the state of affairs on which diversity was properly laid at the outset.")  If anything, these post-filing acts by Mr. Lenzo confirm his Florida domicile at the relevant time period and indicate that Mr. Lenzo only now is attempting to change that domicile.

2.    **Mr. Lenzo's "Evidence" Cannot Overcome The Presumption Created By This Public Record.**

Against the undisputed public record as set forth above, Mr. Lenzo proffers several affidavits that are vague,[2] contradictory,[3] self-serving and largely irrelevant. They identify none of the objective indicia of domiciliary status that are dispositive in this Circuit. Instead, without any supporting evidence, Mr. Lenzo and the other affiants simply place Mr. Lenzo in Italy at various times between the years 2000 to 2004 and purport to represent his "intent" at that time. However, "a mere allegation of residence" does not alone establish domicile. Naegele v. Albers, 355 F. Supp.2d 129, 134 (D.D.C. 2005). Moreover, as already noted, statements of intent cannot overcome objective evidence to the contrary. E.g., Lew v. Moss, 797 F.2d 747, 750 (9th Cir. 1986) ("The courts have also stated that domicile is evaluated in terms of 'objective facts,' and that 'statements of intent are entitled to little weight when in conflict with facts.'") Finally, the affidavits do not speak to Mr. Lenzo's presence in Italy in the year 2005, which is the critical period in determining domicile given the filing date of this action.[4]

In sum, Mr. Lenzo's unsupported, self-serving and contradictory statements that he now lives mainly in Italy cannot overcome the presumption of domicile established by the

---

[2]    For instance, the affidavit of Zanon Adriano, an Italian physician, states that "I regularly saw Giuseppe Lenzo, Virginia DiPerna Lenzo, his mother, and Tindaro Lenzo, his father, on a regular professional basis at least twice a month through the end of 2003, and more frequently in 2004." (Adriano Aff. ¶ 5) That affidavit, however, does not speak to any contacts with Mr. Lenzo in the year 2005. Moreover, by lumping Mr. Lenzo together with his aged father and mother (who died in 2004 and in February 2005 respectively), the affidavit is unclear as to how frequently the doctor actually saw Mr. Lenzo, as opposed to his presumably ailing parents.

[3]    For instance, there is an obvious conflict between Mr. Lenzo's assertion in his original affidavit that he had established an Italian domicile "towards the end of 2002" (Lenzo Aff. ¶ 1) with his concession in his supplemental affidavit to have "claimed homestead for property in Washington DC in 2003 or 2004." (Suppl. Lenzo Aff. ¶ 5)

[4]    Since these affidavits are not sufficient to overcome the presumption of Florida domicile established by the public record, this court can resolve the issue without the need for an evidentiary hearing. Naegele, 355 F.Supp.2d at 135 (finding an evidentiary hearing unnecessary based on the "substantial evidence" of Florida domicile).

following objective criteria:  Mr. Lenzo's property, both real and personal, is in Florida (as well as Washington, D.C.), he maintains a Florida driver's license, and, at the time this lawsuit was filed, he was a registered Florida voter and claimed his Collins Avenue condominium in Florida as his "homestead."  To the extent Mr. Lenzo makes extended trips to Italy, including for the purpose of obtaining medical care as suggested by the Adriano affidavit,[5] that fact alone is insufficient to overcome Florida as his domicile.  As a United States citizen domiciled in Florida as of the date of this lawsuit, Mr. Lenzo is diverse to his sister, Nunziata, who is solely an Italian citizen.

## II.    The So-Called "Probate Exception" Is Inapplicable To This Interpleader Action.

Mr. Lenzo's invocation of the so-called "probate exception" to federal court jurisdiction is equally unavailing.  As a threshold matter, there is no statutory "probate court" of limited jurisdiction in the District of Columbia, Andrade v. Jackson, 401 A.2d 990, 992 n.5 (D.C. 1979),[6] and, not surprisingly, there is no case authority in this Circuit applying the probate exception.  Although probate matters are typically handled by the probate division of Superior Court ("Probate Division"), that division does not have exclusive jurisdiction over

---

[5]    It is well settled that a "'prolonged absence from one's domicile is not determinative of abandonment.'" Naegele v. Albers, 355 F. Supp.2d 129, 135 (D.D.C. 2005)  (quoting, Wagshal v. Rigler, 947 F. Supp. 10, 13 (D.D.C. 1996)).  In Naegele, the court found general assertions regarding a California domicile based on a party's alleged extended presence there insufficient to overcome the presumption of a Florida domicile established by plaintiff's maintenance of a Florida driver's license, Florida voter registration, Florida bank accounts, and membership in a Florida social club.  Naegele, 355 F. Supp.2d at 135.  Similarly, in Wagshal, the court held that plaintiff maintained a Florida domicile based on his Florida voter registration, home ownership in Florida, ownership of personal property in Florida, including an automobile, and a Florida driver's license.  These "substantial indicia of a Florida domiciliary" were sufficient, in the court's view, to create a presumption of Florida domicile, notwithstanding plaintiff's admission to "extended visits" of several years to Maryland, which plaintiff attributed to "health, financial and personal reasons."  Wagshal, 947 F. Supp. at 13 (citing a similar case that held that a two-year absence from Florida for health reasons could not rebut the presumption of Florida domicile established by the maintenance of a Florida driver's license and bank account.)

[6]    Andrade explains: "The Court Reform Act vested the Superior Court with jurisdiction over any civil actions at law or in equity, and over all probate matters. See D.C. Code 1973, § 11-921(a)(5-6). Moreover, under the Act, there is no longer a "Probate Court" as a court of limited jurisdiction. Rather the jurisdiction previously vested in that court is now vested in the Superior Court, a court of general jurisdiction."  Id. at 992 n.5.

such matters. While the Superior Court is separated into a number of divisions, "these functional divisions do not delimit their power as tribunals of the Superior Court with general jurisdiction to adjudicate civil claims and disputes" and it has long been held "that there is no jurisdictional bar to one division of the Superior Court entertaining an action more appropriately considered in another division, so long as doing so does not violate the statute or rules of the court and the claim has a rational nexus to a subject matter within the responsibility of that division." Clay v. Faison, 583 A.2d 1388, 1389-1390 (D.C. 1990) (citations omitted). Accordingly, the policy behind the probate exception – to respect the exclusive jurisdiction of state probate courts – does not apply with equal force in the District of Columbia where no such court of limited jurisdiction exists.

The federal courts who have considered the probate exception employ a two-part test for determining when the probate exception is applicable. Moser v. Pollin, 294 F.3d 335, 340 (2d Cir. 2002). First, federal courts should abstain when asked to actually probate a will or administer a decedent's estate. This is sometimes referred to as the "pure probate" rule and clearly is not at issue here. Id. Second, a federal court should decline to exercise its jurisdiction where doing so would require it to (i) interfere with existing probate proceedings, (ii) assume general jurisdiction of the probate, or (iii) assume control of property in custody of the state probate court. Id. As a question of subject matter jurisdiction, these issues are tested as of the time of the filing of the complaint. Marshall, et al. v. Lauriault, et al., 372 F.3d 175, 181 (3d Cir. 2004) ("To this Court's knowledge, no state probate court exercised jurisdiction over the Trust prior to the appellants filing the present suit. Therefore, the federal court is not asked to interfere with any probate proceeding or assume control over property in probate."); see also Delfani v. United States Capitol Guide Bd., 2005 U.S. Dist. LEXIS 5661, at *6

(D.D.C. 2005) ("It is a firmly established rule that subject matter jurisdiction is tested as of the time of the filing of the complaint.").

As explained more fully below, the allegations in the Complaint demonstrate that, at the time of this lawsuit, the court could not run afoul of any of these prohibitions by accepting jurisdiction of this action.  For purposes of this motion, those allegations are assumed true and construed in plaintiff's favor.  Hoffman v. Fairfax County Redevelopment & Hous. Auth., 276 F. Supp. 2d 14, 17 (D.D.C. 2003) (the court "must assume the truth of the allegations made and construe them in a light favorable to the plaintiff in resolving a 12(b)(1) motion alleging lack of subject matter jurisdiction.")

**A.      The So-Called "Holographic Will" of October 2004 Is Not Being Relied Upon In This Action As A Testamentary Instrument.**

Mr. Lenzo suggests as his principal basis for invoking the probate exception that this court will be called upon to interpret a testamentary instrument to resolve the competing claims of Mr. Lenzo and his sister, Nunziata Lenzo Romano.  However, contrary to Mr. Lenzo's assertions, that document is not relevant to this action as a testamentary instrument.  As Mr. Lenzo well knows, and as alleged in the Complaint and admitted in the Answer of Nunziata Romano, that October 2004 document has not been submitted for probate in the District of Columbia.  (Compl. ¶ 24; Answer ¶ 24)

In asserting her claims to the interpleaded funds, Ms. Romano does not rely on that document as a testamentary instrument (and, indeed, has contended that it is invalid as such under local law), but simply as a writing that she contends is sufficient under the terms of the applicable trust agreement(s) to have revoked the trusts and underlying property transfers prior to Virginia Lenzo's death.  Ms. Romano, through counsel, explained her position in a letter dated December 6, 2005, that preceded this interpleader action:

> On October 3, 2004, in a hand-written document, Virginia Lenzo states: "Any and all papers or documents formally signed by me in relation to the property situated in L St. 1742-1744 N.W. Washington D.C. U.S.A. should be considered null and void." This document, therefore revokes both the Virginia Lenzo Trust and the Tindaro Lenzo Trust.

(Simon Decl. Ex. G)  In short, the trust revocation issue and corresponding title dispute involve

contract and trust law questions, and not probate questions.

### B.    There Was No "Probate" Pending As Of The Date Of This Lawsuit.

The prohibitions to federal court involvement in probate matters, as set forth above,

presume the existence of a pending, parallel action in probate court in which the probate court

already has assumed jurisdiction over the property that is the subject of the federal action.

However, at the time this lawsuit was filed, the only "proceeding" in the Probate Division

involved a petition, sponsored by Nunziata Romano, for admission of a 1995 Will of Virginia

Lenzo to probate.  As alleged in the Complaint, that petition had not been acted upon as of the

filing date of this lawsuit and no personal representative had been appointed to represent the

estate.  (Compl. ¶¶ 12, 22; Answer of Nunziata Romano to Compl. ¶¶ 12, 22)  In the District of

Columbia, the "appointment of a personal representative is a prerequisite to probate and

distribution."  Douglas v. Lyles, 841 A.2d 1, 3 (D.C. 2004).  Thus, at the time this lawsuit was

filed, there only was a putative probate proceeding that had not advanced beyond its earliest

stages.

### C.    The Probate Division Had Not, As Of The Date Of This Lawsuit, Assumed Jurisdiction Over Any Of The Property Or Claims At Issue.

The Probate Division likewise had no jurisdiction over the claims asserted in this

litigation at the time this lawsuit was filed.  While a petition for probate was pending at the

time of this lawsuit, that is not tantamount to an action to reclaim title to property held outside

the probate estate.  To initiate such an action requires the formalities of a lawsuit, including the

filing of a verified complaint and the service of a summons.  See Rule 407 of the Superior

Court Rules of the Probate Division.  No such action was pending at the time of this lawsuit,

nor is any such action pending at this time.

The Probate Division also had no jurisdiction over the property that is the subject of

this interpleader action.  Under District of Columbia law, the probate estate consists of the

property titled in the decedent's name at the time of death, and does not formally pass from the

decedent until a personal representative is appointed.  D.C. Code § 20-105; Douglas v. Lyles,

841 A.2d 1, 3 (D.C. 2004) ("In the District of Columbia, legal title to real property (alike with

personal property) passes not directly to the heirs or devisees, as at common law, but rather to

the personal representative of the decedent's estate").  It also is well settled under District of

Columbia law that "an inter vivos trust in which the beneficial interests passes pursuant to the

trust instrument is not a probate asset."  In re Estate of Clark, 495 F.2d 102, 105 (D.C. Cir.

1973).

For these reasons, at the time this lawsuit was filed, the Probate Division had no

jurisdiction over either the property that was deposited into the court registry in this action, or

over the interests in the real property that form the basis for the competing claims to the

interpleaded funds.  The property that was deposited into the court registry belonged to

Washington Square at the time this action was filed, and the real property at issue was titled in

the name of Giuseppe Lenzo, as Trustee of two inter vivos trusts created by the decedent,

Virginia Lenzo, several years before her death.

**D.** **Interpleader Actions Involve Issues Outside The Province Of Any Probate Court.**

This interpleader action, by its nature, is not confined to resolving the competing claims

of the defendants but, in the first instance, addresses the rights and interests of the plaintiff,

who is neutral to the underlying dispute. Under the settled rule that jurisdiction is determined at the outset of a case, any jurisdictional analysis necessarily must focus on this "first stage" of the interpleader action, that is, the stage in which the neutral party requests the court to take possession of funds in its custody so as to discharge the neutral party from any further obligation with respect to such funds or any competing claims to them. Star Ins. Co. v. Cedar Valley Express, LLC, 273 F. Supp. 2d 38, 40-41 (D.D.C. 2002).

The equitable power to award such relief is a recognized power belonging to the federal court and is not reserved exclusively, if at all, for probate courts. Marshall, et al. v. Lauriault, et al., 372 F.3d 175, 181 (3d Cir. 2004) (noting that "the Judiciary Act of 1789 conferred equity jurisdiction upon the federal courts"). Accordingly, an interpleader action is, in the first instance, outside the province of probate and thus is not susceptible to a challenge under the probate exception. See Leimbach v. Allen, 976 F.2d 912, 917 (4th Cir. 1992) (since, "at the moment of filing, the otherwise disinterested stakeholder had a substantial interest in having the complaint for interpleader granted, thereby avoiding the expense of further litigation and risk of multiple liability," jurisdiction was not lost when the stakeholder was later discharged prior to the second stage of the interpleader action); see also infra note 8.

### E.    The Competing Claims In This Lawsuit Do Not Involve Issues That Are Exclusive To The Probate Division.

The competing claims at issue in this interpleader action that will constitute the "second stage" of this interpleader action, Star Insurance, supra, are in the nature of actions to quiet title to property held outside the probate estate and for revocation of an inter vivos trust. These actions are within the general jurisdiction of the Superior Court and thus, by extension, can be asserted in federal court where diversity exists. D.C. Code § 11-921(3)(A)(v).

Indeed, District of Columbia law imposes a specific statute of limitations for contesting trusts which is entirely independent of whether, and when, a probate action has been filed, see D.C. Code § 19-1306.04, and significantly different from the corresponding provision of Title 20 regarding will contests.  In a trust revocation proceeding, the limitations period can expire as early as 90 days after the settlor's death, meaning that a plaintiff contesting a trust could proceed, and in many cases would have no choice but to proceed, in any court of competent jurisdiction well before any probate proceeding is initiated or personal representative appointed.  Compare D.C. Code § 20-305 ("any person may file a verified complaint to contest the validity of a will within 6 months following notice by publication of the appointment or reappointment of a personal representative under section 20-704").  Under this statutory scheme, it is quite clear that the Probate Division does not have priority to resolve matters regarding the revocation of trusts.

Moreover, the fact that a personal representative may become involved in this litigation does not change the character of these claims.  Personal representatives regularly participate in federal court actions, as reflected by provisions of 28 U.S.C. § 1332(c)(2) which address the citizenship of personal representatives for diversity purposes, and regularly are substituted into such actions after they have begun pursuant to Rule 25 of the Federal Rules of Civil Procedure.  At present, no personal representative has been appointed over the estate of Virginia Lenzo.  If, and when that occurs, Plaintiff is prepared to substitute that party as a defendant in place of the "Jane Doe" defendant.

In the final analysis, any judgment in this interpleader action will simply decree whether title remains in the name of Giuseppe Lenzo, as trustee of the respective trusts, or reverted back to Virginia Lenzo prior to her death.  The probate exception does not prevent the

exercise of concurrent federal jurisdiction over a suit to determine whether, prior to final distribution of the decedent's property by the probate court, there is property titled outside the probate estate that should be brought within it. Indeed, Rule 25 of the Federal Rules of Civil Procedure expressly permits a personal representative to substitute in a federal court action to prosecute claims of a deceased party. In such cases, the defendants holding title outside the probate estate are, in effect, creditors of the estate.

The Supreme Court, in <u>Markham v. Allen</u>, 326 U.S. 490 (1946), recognized "a long series of [its] decisions" establishing that federal courts may "entertain suits in favor of creditors, legatees and heirs and other claimants against a decedent's estate to establish their claims so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." <u>Id.</u> at 494. The Court also recognized that, "while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, . . . it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." <u>Id.</u> (citations omitted); <u>see also</u>, <u>Leimbach</u>, 976 F.2d at 916-19 (competing claims of heirs for death benefits under an insurance policy, alleging among other things undue influence in the change of beneficiary prior to the decedent's death, is a proper subject for an interpleader action in federal court).

### F.     Mr. Lenzo's Reliance On <u>Marshall</u> Is Misplaced.

Mr. Lenzo principally relies for his position on the case of <u>Marshall v. Marshall</u>, 392 F.3d 118 (9th Cir. 2004), <u>cert. granted</u>, 2005 U.S. LEXIS 5421 (U.S. Sept. 27, 2005). That

reliance is misplaced since the analysis in Marshall was derived from a different statutory scheme than exists under District of Columbia law and involves material facts not present here. Accordingly, this court need not await the Supreme Court's decision in Marshall to conclude that the probate exception does not apply here.

Several threshold factors emphasized by the Ninth Circuit in Marshall are not applicable here. First, the federal court action in Marshall was initiated after extensive litigation had occurred in state probate court, in which the federal court plaintiff, the widow of the decedent, had actively participated. The issues litigated in probate court were virtually identical to the issues subsequently raised in the federal court action, and the outcome of the actions conflicted. Marshall, 392 F.3d at 1134 (noting that "the district court determined that the trust was forged and was procured by fraud in direct and irreconcilable conflict with the Texas probate court's judgment entered consistent with the findings of a jury"). Moreover, the property that was subject to the dispute was a probate asset over which the Texas probate court had exercised jurisdiction before the federal action was commenced. Here, in contrast, the interpleader action is the first-filed litigation, there is no pending action in the Probate Division involving the same parties or claims, and the property in dispute is held by outside parties and thus is not an asset of any probate estate.

Second, the court in Marshall relied on the principle that "[w]here a state has relegated jurisdiction to a special court and if that state's trial courts of general jurisdiction do not have jurisdiction to hear probate matters, then the federal courts also lack jurisdiction over probate matters." Marshall, 392 F.3d at 1136. The court noted, in that regard, that the Texas probate court had ruled that it had exclusive jurisdiction over all of the claims that were in dispute between the parties based on a provision of the Texas Probate Code vesting such jurisdiction in

the statutory probate court. Id. at 1136 n. 13. That Texas code provision provided that "[a]ny cause of action appertaining to estate or incident to an estate shall be brought in a statutory probate court." Id. (quoting TEX. PROB Code §§ 5A(b) and 5(f)). However, in the District of Columbia, there is no "special court" with exclusive jurisdiction over causes of action "incident to an estate," nor is there a designated "probate court" of limited jurisdiction over probate matters. As discussed above, although probate matters are typically handled by the probate division of Superior Court, that division does not have exclusive jurisdiction over such matters. Thus, the opposite principle applies here, namely that the probate exception does not apply when, as here, the nature of the dispute is one that falls within the general jurisdiction of the state court and, accordingly, can be asserted in federal court when diversity exists. Lauriault, 372 F.3d at 181.

Third, applying Texas law, the Marshall court saw no distinction between causes of action involving inter vivos trusts and causes of action involving wills. Marshall, 392 F.3d at 1135. However, under the law of the District of Columbia, there are distinct differences in the manner for challenging such instruments. Compare D.C. Code § 19-1306.04 with D.C. Code § 20-305, supra. Moreover, it is well settled under District of Columbia law that "an inter vivos trust in which the beneficial interest passes pursuant to the trust instrument is not a probate asset." In re Estate of Clark, 495 F.2d 102, 105 (D.C. Cir. 1973). Thus, unlike in Marshall, this court would not be infringing on the province of the Probate Division by addressing issues that, under applicable law in this jurisdiction, are not exclusively within the province of that division.

Finally, Marshall involved exclusively a dispute among the heirs, or potential heirs, of the decedent. This interpleader action, in contrast, also involves the rights and interests of a

party who is neutral to the underlying conflict, namely, Washington Square. Under the settled

rule that jurisdiction is determined at the outset of a case, any jurisdictional analysis must

consider those rights, thereby foreclosing the conclusion that such an action is reserved

exclusively in the Probate Division. Accordingly, an interpleader action is, in the first

instance, outside the province of probate court jurisdiction and thus is not susceptible to a

jurisdictional challenge under the probate exception.

**III.     There Is No Basis For This Court To Abstain From This Action Or For A Stay To Be Issued.**

Mr. Lenzo implies, erroneously, that at the inception of this litigation, there was

pending, parallel litigation in the Probate Division asserting claims to the property at issue in

this interpleader action. That is not correct. As alleged in the Complaint, a petition for probate

of a 1995 Will of Virginia Lenzo was pending at the time of this interpleader action, but that

petition had not been acted upon. (Compl. ¶ 12). Moreover, no complaint has been filed

pursuant to Rule 407 of the Probate Division asserting any claim to either the rent payments

that have been deposited by Washington Square into the registry of this court or the real

property held of record by Mr. Lenzo in his capacity as trustee of the Virginia Lenzo and

Tindaro Lenzo trusts.

Absention is inappropriate when no parallel proceeding was pending at the time a

federal action was filed. Johns v. Rozet, 770 F. Supp. 11, 15 (D.D.C. 1991). A parallel

proceeding requires the same parties and the same issues. Id.; Star Ins. Co. v. Cedar Valley

Express, LLC, 273 F. Supp. 2d 38, 43-44 (D.D.C. 2002) (declining to abstain from interpleader

action when "there is no indication that any of the alleged claimants in this case have instituted

any actions affecting the bond at issue in either state or federal court."). Moreover, as

explained in Rozet, "[w]hile it may be true . . . that [the state case] could be modified so as to

make it identical to the current federal claim, that is not the issue here. The issue is whether [the state case] as it currently exists, is a parallel state-court proceeding." Rozet, 770 F. Supp. at 15.

As there is no pending, parallel state court proceeding that includes the same parties and issues as this interpleader action, there is no basis for abstention.[7] For the same reason, a stay of this litigation is likewise inappropriate. Absent some showing that a parallel proceeding has been initiated in state court that would address the claims at issue in this action, and afford relief to all parties, there is simply no grounds to issue a stay. If, however, the court is inclined to issue a stay, the court should impose the stay only as to the "second stage" of the interpleader action; that is, as regards the adjudication of the competing claims of the interpleader defendants. The stay should not impact plaintiff's rights in the "first stage" of the interpleader action to obtain a discharge under equitable terms that include, among other things, the right of the plaintiff to make further deposits of future rent payments into the court registry, an injunction enjoining claims against the plaintiff with respect to such payments, and the right to petition the court prior to discharge for an award of attorneys' fees and costs incurred in this matter.[8]

---

[7]    This is true even if the court were to apply to this interpleader action the Brillhart standard for abstention applicable to declaratory judgment actions. NY Life Distribs. v. Adherence Group, 72 F.3d 371, 382-383 (3d Cir. 1995). In NY Life Distributors, the court held that the Brillhart standard applied to interpleader actions, but emphasized that a threshold issue under that standard likewise was "whether the state court action is indeed 'parallel'; that is, whether it encompasses the competing claims to the Mainstay Mutual Fund monies that are raised here." Id. The court reasoned that, "[s]ince the very basis for deference is the avoidance of needless duplicative litigation, the absence of a parallel state proceeding, as we have defined it in this context, would counsel against, if not proscribe, dismissal." Id.

[8]    E.g., Humble Oil & Refining Co. v. Copeland, 398 F.2d 364, 368 (4th Cir. 1968) (proper to stay interpleader action in South Carolina, pending resolution of dispute in Texas state or federal court over title to Texas realty). In Humble, the court held that the competing claims to the Texas oil royalties that underlied an interpleader action filed in South Carolina should be resolved in Texas state or federal court, which had exclusive jurisdiction in such matters under the rule that limits a federal court from adjudicating rights in real property located in states other than in the state in which the court sits. Id. at 367. The court reasoned that only Texas courts had in rem jurisdiction that could bind the numerous known and unknown heirs asserting claims to the

24

## CONCLUSION

For the foregoing reasons, the motion to dismiss or in the alternative abstain from, or stay, this litigation, should be denied.

Date: March 23, 2006                          Respectfully submitted,


/s/ Jeremy S. Simon
Jeremy S. Simon
D.C. Bar No. 447956
Thompson, Loss & Judge LLP
1919 Pennsylvania Ave., N.W.
Suite M-200
Washington, D.C. 20006
(202) 772-5170 (phone)
(202) 772-5180 (fax)

Counsel for Interpleader Plaintiff

---

Texas oil royalties. Id. at 368 n. 9. The concerns expressed in Humble are not applicable here, because the real property at issue is located in this jurisdiction and all parties with any interest in that property at issue have been named in this action. However, Humble is instructive in that it demonstrates that exceptions to federal court jurisdiction based on local action doctrines do not deprive federal courts of jurisdiction over interpleader actions and that, when the interpleader action might interfere with parallel litigation in another forum (which is not the case here), the proper course is not to dismiss the action, but to issue a stay that protects the rights of the neutral party.

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 23rd day of March 2006, I caused to be served a true and correct copy of the foregoing, via first-class mail, postage prepaid on the following:

1.  Michael Pollack, Esq.
    Law Offices of Babak Movahedi, PLLC
    1700 Q. Street, N.W.
    Washington, D.C. 20009

2.  Joseph DeGance, Esq.
    3471 N. Federal Highway
    Suite 300
    Fort Lauderdale, FL 33306

3.  Michael A. Dymersky, Esq.
    Furey, Doolan & Abell, LLP
    8401 Connecticut Avenue
    Suite 1100
    Chevy Chase, MD 20815


                                        /s/ Jeremy S. Simon
                                        Jeremy S. Simon