<u>LEASE AGREEMENT</u>

Between

Nunziato Di Perna
Virginia Di Perna Lenzo
Maria Di Perna Tripoli
Anna Di Perna
Tindaro Lenzo
Santi Tripoli
Mario Tripoli
Cettina Maria Tripoli

(Landlord)


and


Washington Square Limited Partnership

(Tenant)

LEASE AGREEMENT

(Lot 49 in Square 163 in
the District of Columbia)


TABLE OF CONTENTS

| Section Number | Section Title | Page |
|---|---|---|
| 1 | Definitions | 1 |
| 2 | Term of Lease | 3 |
| 3 | Rent and Additional Charges | 4 |
|  | (a)  Rent | 4 |
|  | (b)  Appraisal Procedure | 6 |
|  | (c)  Taxes | 7 |
|  | (d)  Tenant's Right to Contest | 8 |
|  | (e)  Additional Rent | 8 |
| 4 | Demolition, Development and Use of Premises | 8 |
|  | (a)  Demolition | 8 |
|  | (b)  Construction | 9 |
|  | (c)  Permits, Licenses and Easements | 9 |
|  | (d)  Resubdivision or Similar Agreements | 11 |
|  | (e)  Use of Premises | 11 |
| 5 | Utilities | 12 |
| 6 | Maintenance and Repairs | 12 |
| 7 | Public Liability | 12 |
| 8 | Condemnation | 13 |
|  | (a)  Total Taking | 13 |
|  | (b)  Partial Taking | 13 |
|  | (c)  Temporary Taking | 14 |
|  | (d)  Condemnation Award | 15 |
|  | (e)  Intervention in Condemnation Proceedings | 15 |
| 9 | Liens | 15 |
| 10 | Default and Remedies of Landlord | 16 |
|  | (a)  Event of Default | 16 |
|  | (b)  Notice of Default | 17 |
|  | (c)  Action Upon Notice of Default | 17 |
|  | (d)  Notice of Continuing Default | 17 |
|  | (e)  Action Upon Notice of Continuing Default | 18 |
|  | (f)  Notice of Termination | 18 |
|  | (g)  Landlord's Remedies with Respect to the Premises | 19 |
|  | (h)  Waiver of Distraint | 20 |
|  | (i)  Mortgagees | 20 |

| 11 | Covenant and Warranty of Title | 20 |
|----|--------------------------------|----|
| 12 | Leasehold Mortgages | 21 |
| | (a)  Rights of Leasehold Mortgagees | 21 |
| | (b)  No Merger | 27 |
| | (c)  Multiple Leasehold Mortgagees | 27 |
| | (d)  No Subordination of Freehold | 28 |
| | (e)  Financing Requirements | 28 |
| 13 | Quiet Enjoyment | 29 |
| 14 | Certificates | 29 |
| 15 | Assignment and Subletting | 30 |
| 16 | Right of First Refusal | 31 |
| 17 | Surrender of Premises | 31 |
| 18 | Leasing Commissions | 32 |
| 19 | General Provisions | 32 |

## LEASE AGREEMENT

THIS LEASE AGREEMENT is made and entered into on this 24th day of _July_, 1980, by and between (i) Nunziato Di Perna, Virginia Di Perna Lenzo, Maria Di Perna Tripoli, Anna Di Perna, Tindaro Lenzo, Santi Tripoli, Mario Tripoli and Cettina Maria Tripoli (hereinafter referred to as "Landlord") and (ii) Washington Square Limited Partnership, a District of Columbia limited partnership (hereinafter referred to as "Tenant").

## WITNESSETH:

For and in consideration of the rents, covenants, agreements and conditions herein contained on the part of Tenant to be paid, kept, observed and performed, Landlord does hereby lease the Premises (as hereinafter defined) to Tenant, and Tenant does hereby take and lease the Premises from Landlord, subject to the terms and conditions of this Lease.

1.  Definitions.

As used in this Lease, the following words and phrases shall have the meanings indicated:

(a)  Additional Charges.  All amounts payable by Tenant to Landlord under this Lease other than Rent.

(b)  Commencement Notice.  The notice given by Tenant to Landlord pursuant to Section 2 of this Lease.

(c)  Event of Default.  Any event described in Section 10(a).

(d)  Lease Commencement Date.  The date specified in the notice by Tenant to Landlord pursuant to Section 2 of this Lease.

(e)  <u>Lease Year.</u>  A calendar year.  The first Lease Year commences on January 1, 1981.  Rent and Additional Charges for any partial years shall be appropriately pro-rated.

(f)  <u>Mortgage</u>.  Any mortgage or deed of trust.

(g)  <u>Mortgagee</u>.  The holder of any mortgage or the beneficiary of any deed of trust.

(h)  <u>Notice of Default</u>.  The notice described in Section 10(b).

(i)  <u>Notice of Continuing Default</u>.  The notice described in Section 10(d).

(j)  <u>Notice of Termination</u>.  The notice set forth in Section 10(f).

(k)  <u>Person</u>.  A natural person, a partnership, a corporation and any other form of business or legal association or entity.

(l)  <u>Premises</u>.  Lot 49 in Square 163 in the District of Columbia, in the Subdivision made by Wilhelmina Hense, as per plat recorded in Liber No. 48 at Folio 105, of the Records of the Office of the Surveyor of the District of Columbia.  The Premises shall include not only the land area just described but also all rights appurtenant thereto, including all right and interest, if any, of Landlord, in and to the land lying in the streets, alleys and sidewalks adjoining said land area, and including easements and rights in respect of all adjoining public and private space, including vault space, it being intended hereby that all rights, title and interest of Landlord in respect of the Premises or rights, title and interest relating to the Premises are hereby granted to Tenant during the Term.

(m)  <u>Real Estate Taxes</u>.  All taxes, assessments, water and sewer rents, if any, and other charges, if any, general,

- 2 -

special or otherwise, levied or assessed upon or with respect to the ownership of the Premises and any improvements now or hereafter constructed thereon imposed by any public or quasi-public authority having jurisdiction.  Real estate taxes shall not include any federal, state or municipal inheritance, estate, succession, transfer, gift, franchise, corporation, income or profit tax or capital levy.

(n)  Rent.  The amounts specified in Section 3(a) of this Lease.

(o)  Requirements.  All laws, statutes, ordinances, orders, rules, regulations and requirements of the federal and District of Columbia governments, and the appropriate agencies, officers, departments, boards and commissions thereof, and the board of fire underwriters and/or the fire insurance rating organization or similar organization performing the same or similar functions, whether now or hereafter in force, applicable to the Premises, as to the manner of use or the maintenance, repair or condition of the Premises and/or the improvements thereon.

(p)  Semi-Annual Period.  An interval of exactly six (6) months during the Term.  The first Semi-Annual Period begins on January 1, 1981, and each Semi-Annual Period follows sequentially thereafter.

(q)  Term.  The period specified in Section 2 of this Lease.

2.  Term of Lease.

The Term of this Lease shall commence on the date (the "Lease Commencement Date") which shall be the first to occur of (i) the date which is specified in a written notice (the "Commencement Notice") given by Tenant to Landlord, which notice

shall be given at least thirty (30) days prior to the Lease Commencement Date, or (ii) November 1, 1980. Landlord shall deliver possession of the Premises to Tenant on the Lease Commencement Date. The Term of this Lease shall expire at midnight on the last day of the month which is ninety-nine (99) years after the Lease Commencement Date.

      3.   <u>Rent and Additional Charges.</u>

      (a)   <u>Rent</u>.  Tenant shall pay to Landlord Rent in semi-annual installments in advance on the first day of each Semi-Annual Period during the Term in the following amounts during each of the following periods:

      (i)  the sum of Three Hundred Thousand Dollars ($300,000), to be paid upon the execution of the Lease by all parties to American Security Bank, N.A., in escrow, the same to be paid over to the Landlord on the Lease Commencement Date;

      (ii)  from the Lease Commencement Date through the fifth (5th) Lease Year: One Hundred Twelve Thousand Five Hundred Dollars ($112,500) per Semi-Annual Period, except that the Rent payable on January 1, 1981 shall also include Rent at the rate of Eighteen Thousand Seven Hundred Fifty Dollars ($18,750) per month from the Lease Commencement Date to December 31, 1980;

      (iii)  from the sixth (6th) through the tenth (10th) Lease Years: One Hundred Fifty Thousand Dollars ($150,000) per Semi-Annual Period;

      (iv)  from the eleventh (11th) through the fifteenth (15th) Lease Years: One Hundred Eighty-Seven Thousand Five Hundred Dollars ($187,500) per Semi-Annual Period;

      (v)  from the sixteenth (16th) through the twentieth (20th) Lease Years: Two Hundred Twenty-Five

Thousand Dollars ($225,000) per Semi-Annual Period;

(vi)  from the twenty-first (21st) through the twenty-fifth (25th) Lease Years:  Two Hundred Sixty-Two Thousand Five Hundred Dollars ($262,500) per Semi-Annual Period;

(vii)  from the twenty-sixth (26th) through the thirtieth (30th) Lease Years:  Three Hundred Thousand Dollars ($300,000) per Semi-Annual Period;

(viii)  from the thirty-first (31st) through the thirty-fifth (35th) Lease Years:  Three Hundred Thirty-Seven Thousand Five Hundred Dollars ($337,500) per Semi-Annual Period;

(ix)  from the thirty-sixth (36th) through the fiftieth (50th) Lease Years:  Three Hundred Seventy-Five Thousand Dollars ($375,000) per Semi-Annual Period;

(x)  from the fifty-first (51st) through the sixtieth (60th) Lease Years; from the sixty-first (61st) through the seventieth (70th) Lease Years; from the seventy-first (71st) through the eightieth (80th) Lease Years; from the eighty-first (81st) through the ninetieth (90th) Lease Years; and from the ninety-first (91st) Lease Year through the expiration of the Term: semi-annual installments of rent calculated at an annual rate of ten percent (10%) of the fair market value of the Premises exclusive of any improvements situated thereon and exclusive of any rights or interests acquired by Tenant other than from Landlord under this Lease, as such value is determined at the beginning of each such ten (10) year period by appraisal pursuant to the procedure set forth in Section 3(b) hereof; provided, however, that in no event shall the then effective Rent be reduced as a result of any such reappraisal; and provided further that in no event shall the then

- 5 -

effective Rent be increased by more than One Hundred Thousand Dollars ($100,000) per annum for such ten (10) year period as a result of any such reappraisal. The Rent and all Additional Charges shall be paid promptly when due, in lawful money of the United States, without notice or demand and without deduction, abatement, counterclaim or setoff, except as expressly permitted in this Lease, to Landlord at the place to which notices to Landlord are required to be sent or such other address as Landlord may designate in writing from time to time.  Landlord hereby designates that Rent and Additional Charges shall be payable one-third (1/3) to Nunziato Di Perna and his heirs, personal representatives and assigns, one-third (1/3) to Virginia Di Perna Lenzo and her heirs, personal representatives and assigns, one-sixth (1/6) to Maria Di Perna Tripoli and her heirs, personal representatives and assigns, one-twelfth (1/12) to Mario Tripoli and his heirs, personal representatives and assigns, and one-twelfth (1/12) to Cettina Maria Tripoli and her heirs, personal representatives and assigns, at such addresses and in such manner as each of said persons may hereafter designate, it being understood and agreed that each of such persons shall have the absolute right to independently change, on written notice to the Tenant, his or her said address and the manner of making payments to him or her, but such change shall not affect the amount of the payments to any other such person or the address or manner of making payments to any other such person.

(b)  Appraisal Procedure.  At the beginning of the fiftieth (50th) Lease Year, and at successive 10-year intervals thereafter throughout the Term, there shall be a determination of the fair market value of the Premises.  Unless Landlord or Tenant shall have been able to agree on such fair market value prior to such time, such fair market value shall be established by appraisal pursuant to the rules and procedure  described in this section.  Landlord shall obtain an appraisal by an appraiser designated by Landlord, and shall deliver a copy of the same to

Tenant. Tenant may either accept such appraisal or reject such appraisal. In the event Tenant rejects such appraisal, Tenant shall designate a second appraiser and the two appraisers shall select a third appraiser. Each appraiser shall be a member of the Master Appraisers Institute (MAI) or its successor organization. In making the appraisal, each appraiser shall value the Premises exclusive of any improvement situated thereon but giving due consideration to the value of the Premises as part of a larger tract of adjacent lands owned or leased by Tenant, such value to be determined as if the actual improvements then situated thereon were the highest and best use to which the land could lawfully be put; _provided_ that when constructed such improvements were in fact the highest and best use to which the land could then be put; _provided further_, that the Landlord stipulates and agrees that as of the date of execution of this Lease the highest and best use of the Premises is for an office building with commercial and garage space. The appraised value as determined by the third appraiser shall be the fair market value determined hereunder except that if the third appraisal is below the lower of the first two appraisals, the lower of the first two appraisals shall be the fair market value, and that if the third appraisal is higher than the higher of the first two appraisals, the higher of the first two appraisals shall be the fair market value. Landlord and Tenant shall each pay the cost of the appraiser designated by them and shall divide equally the cost of the third appraiser. In the event that either Landlord or Tenant refuses or fails to appoint an appraiser when required hereunder, the President of the Washington Board of Realtors or successor organization shall, at the request of the other party hereto, appoint such appraiser, whose fees shall be paid by the party required to designate him.

(c) _Taxes_. Tenant shall pay, prior to delinquency, all Real Estate Taxes levied on the Premises or any improvements

- 7 -

now situated or hereafter constructed thereon during the Term
of this Lease.  In the event that notices relating to Real
Estate Taxes are received by Landlord, Landlord shall promptly
forward such notices to Tenant.  Any Real Estate Taxes which
are applicable only to a portion of the Term shall be prorated
between Landlord and Tenant on a daily basis.

(d)  <u>Tenant's Right to Contest</u>.  Tenant may, if it
disputes the amount or validity of any Real Estate Tax levied
on the Premises or any improvements thereon, contest and defend
against the same at its own expense, and in good faith diligently
conduct any necessary proceedings to prevent and avoid the same;
provided, however, that such contest shall be prosecuted to a
final conclusion as speedily as possible.  Any rebate made on
account of any Real Estate Tax paid by Tenant shall belong and be
paid to Tenant.  Landlord agrees to promptly render to Tenant all
reasonable assistance, at no expense to Landlord, in contesting
the validity or amount of any Real Estate Tax, including joining
in the signing of any protests or pleadings which Tenant may
deem advisable to file, and Landlord hereby appoints Tenant as
its agent and attorney-in-fact to execute in Landlord's name
any of such protests or pleadings.  During any such contest,
Tenant shall (by the payment of such disputed Real Estate Tax,
if necessary) prevent any foreclosure of or any divesting thereby
of Landlord's title, reversion or other interest in or to the
Premises and will further (by the payment of such disputed Real
Estate Tax, if necessary) prevent the public sale or foreclosure
of any lien for any such taxes, assessments or charges.

(e)  <u>Additional Rent</u>.  All Additional Charges shall
be deemed to be additional rent and all remedies applicable to
the non-payment of Rent shall be applicable thereto.

4.  <u>Demolition, Development and Use of Premises</u>.

(a)  <u>Demolition</u>.  Landlord shall have the right to

- 8 -

remove from the Premises, prior to the Lease Commencement Date, any furniture, fixtures or other personal property located thereon.  Tenant shall have the right, in its sole discretion and without notice to Landlord, at any time or times during the Term of this Lease, to demolish any or all improvements now or hereafter situated on the Premises.  Costs of razing any improvements shall be borne by Tenant, and Tenant shall be entitled to the salvage value, if any, therefrom.

(b)  Construction.  Tenant shall have the right, in its sole discretion, at any time and from time to time and as frequently as it wishes during the Term of this Lease without the necessity of securing Landlord's permission or consent, to construct on the Premises any improvements which Tenant may deem necessary or desirable, and/or to make such replacements, changes, repairs and alterations, structural or otherwise, in and to the improvements now or hereafter located on the Premises as Tenant may deem necessary or desirable.  Such improvements may be constructed solely upon the Premises, or may be one or more buildings partly upon the Premises and partly upon other real property or properties in which Tenant has an interest.  Title to all improvements erected by Tenant on the Premises shall be in and remain in Tenant for and during the entire Term.

(c)  Permits, Licenses and Easements.  Landlord shall, within fifteen (15) business days after receipt of a written request from Tenant (i) join in any and all applications for permits, licenses or other authorizations required by any governmental or other body claiming jurisdiction in connection with the development of improvements upon the Premises, the provision of utilities, any work which Tenant may do hereunder, or any lawful use of the Premises by Tenant, (ii) join in grants of rights-of-way and/or easements for the installation, maintenance or repair of sanitary sewers, storm sewers, water,

- 9 -

telephone, electricity or gas lines and other public or private
utilities and facilities, and dedications of lands or grants of
rights-of-way and/or easements for public and private alleys,
sidewalks and thoroughfares, all as may be useful and/or
necessary in the sole judgment of Tenant to the proper economic
development of the Premises and any adjoining property in which
Tenant has an interest or of the improvements that might be
erected thereon, (iii) release and surrender any easements
and/or rights-of-way appurtenant to the Premises which affect
any other real property owned, leased or controlled by the Tenant,
and (iv) join in proceedings necessary to open or close alleys
(it being agreed that the portion of any alley closed during
the Term which accrues to the Landlord shall accrue to Landlord
as owner of the Premises and shall be considered to be leased
to Tenant hereunder and shall constitute part of the Premises),
execute applications for changes in zoning, special exceptions
or special use permits, agreements or easements (or modifications
thereof) or any other governmental approvals which Tenant in its
sole discretion deems necessary and/or useful with the governmental
authorities having jurisdiction (including, without limitation,
the District of Columbia government and the Washington
Metropolitan Area Transit Authority) and join in any and all
other actions or proceedings which Tenant in its sole discretion
may require from time to time in furtherance of Tenant's plans
to erect a new building or buildings or to construct additions
or alterations on the Premises and on any adjoining land or
lands.  Notwithstanding the foregoing, no consent or execution
by Landlord of any documents pursuant to this subsection shall
diminish the Rent reserved hereunder.  If Landlord shall not, by

the expiration of said fifteen (15) business day period, have
joined in any such application, grant, dedication or proceeding,
Tenant shall have the right to execute the same in the name of
Landlord, and for that purpose Landlord hereby irrevocably
appoints Tenant as its attorney in fact to execute the same on
behalf of Landlord.

(d)    Resubdivision or Similar Agreements.  Tenant
shall have the right, from time to time, to include the Premises
with any other lands in Square 163 owned, leased or controlled
by Tenant for the purposes of subdividing all or any portion
of such property, and Landlord covenants and agrees to execute
any and all plats of subdivision and resubdivision and any
and all other documents necessary or required by any governmental
agency in connection therewith.  No such execution by Landlord
shall result in any reduction of the Rent payable under this
Lease.  The Premises leased to Tenant hereunder shall include
not only the land area originally leased to Tenant and
designated in Section 1(1), but also all of the Landlord's
right, title and interest in any lot or lots into or with
which the Premises are subdivided or resubdivided as reflected
on any such plat of subdivision or resubdivision.  If Landlord
shall not, within fifteen (15) business days after Tenant's request,
have executed such plats or documents, Tenant shall have the
right to execute the same in the name of Landlord, and for
that purpose Landlord hereby irrevocably appoints Tenant as
its attorney in fact to execute the same on behalf of Landlord.

(e)    Use of Premises.  Tenant shall have the
right to use the Premises, either alone or in connection
with any other property, for any lawful purpose, and in this
connection Tenant shall have the right to do all things and
take all actions with respect to the use and occupancy of the
Premises as if the Tenant were the owner thereof.  Landlord

- 11 -

shall, upon request of Tenant, promptly sign all applications for licenses and permits required by Tenant for the lawful conduct and operation of any business on the Premises including, without limitation, applications for occupancy permits, provided that the cost of obtaining such licenses and permits shall be borne by Tenant.

      5.  <u>Utilities</u>.

Tenant shall pay, or cause to be paid by sublessees or others, when due, all charges for all utilities, including but not limited to, water, gas and electricity, and for all other public services provided to the Premises.

      6.  <u>Maintenance and Repairs</u>.

Landlord shall have no responsibility whatsoever for any repairs, maintenance, alterations, and/or replacements to the Premises and all improvements located thereon, it being intended that Tenant shall have full responsibility therefor.

      7.  <u>Public Liability</u>.

Except for damage caused by Landlord or its agents, employees or contractors, Landlord shall not be liable to Tenant or to any other person for any damage to person or property (i) caused by any act, omission or neglect of Tenant or any other person, or (ii) incident to the use of the Premises (including improvements) or any business conducted thereon, and Tenant covenants and agrees to hold Landlord harmless from all claims or liabilities from or in respect of any such damage.  Tenant shall carry at its own cost (or

cause to be carried by sublessees or others), at all times during the Term of this Lease policies of comprehensive public liability insurance with aggregate limits of not less than Two Million Dollars ($2,000,000) (for any one person), Five Million Dollars ($5,000,000) (for any one occurrence) for bodily injury and death, and One Hundred Thousand Dollars ($100,000) for property damage, which policy limits shall be periodically increased by the Tenant during the Term to reflect insurance standards current from time to time, and which policies shall insure Landlord, Tenant and Trustee for claims for injuries and death sustained by persons or property while on the Premises, adjoining streets, property and passageways.

8.   Condemnation.

(a)   Total Taking.  In the event that all right, title and interest of Landlord and Tenant in and to the Premises is acquired by authority of any governmental agency in the exercise of its power of eminent domain or by purchase in lieu thereof, the rights and obligations of the parties hereunder (except rights and obligations arising prior to such taking) shall terminate as of the date of such taking and the parties hereto shall look solely to the condemnation authority for compensation for their respective interests in the Premises, as hereinafter provided, and Tenant shall have no obligation to pay any rentals or other sums payable by Tenant under the terms of this Lease or perform any obligations hereunder which accrue after the date of such taking.

(b)   Partial Taking.  In the event that less than all of the right, title and interest of Landlord or Tenant

- 13 -

in the Premises is acquired by authority of any governmental
agency in the exercise of its power of eminent domain or by
purchase in lieu thereof, this Lease shall terminate as to
the portion of the Premises so taken but shall continue as to
the remainder of the Premises.  The Rent accruing after the
date of such taking shall be adjusted by multiplying the then
effective Rent by a fraction, the numerator of which is the
fair market value of the Premises immediately after such taking
and the denominator of which is the fair market value of the
Premises immediately before such taking.  In the event that
Landlord and Tenant cannot agree on the fair market value of
the Premises before and after such taking within ninety (90)
days after the date of such taking, such fair market value shall
be established by appraisal in accordance with the appraisal
rules and procedure described in Section 3(b).

     (c)  <u>Temporary Taking</u>.  If all or any portion of
the interest of Tenant in the Premises is acquired for a period
of time ending prior to the expiration of the Term of this
Lease, by authority of any governmental agency in the exercise
of its power of eminent domain or by purchase in lieu thereof,
this Lease shall not terminate and Tenant shall continue to
perform and observe all of its obligations hereunder as though
such taking had not occurred except to the extent that it may
be prevented from doing so by reason of such taking.  Tenant
shall in no event be excused from the payment of Rent or

Additional Charges.  In the event of such a temporary taking, Tenant shall be entitled to receive the entire amount of any award made for such taking (whether paid by way of damages, rent or otherwise) and Landlord hereby assigns such award to Tenant.

(d)  <u>Condemnation Award</u>.  In the event of any taking described in this Section 8 (whether in respect of a total or partial taking), other than a temporary taking covered by Section 8(c), the net condemnation award (after deduction of all expenses, including fees of attorneys, appraisers, and expert witnesses), shall be allocated and paid as follows and in the following order of priority:

(1)  To the Landlord, a sum equal to ten (10) times the annual Rent in effect on the date of such taking; and

(2)  To the Tenant, the balance of such award.

Tenant shall be entitled to any award in respect of moving expenses, or loss of good will or profit or in respect of fixtures owned by Tenant or any subtenant, or the cost or expense for the repair and removal of such fixtures.

(e)  <u>Intervention in Condemnation Proceedings</u>. Tenant and any Leasehold Mortgagee shall have the right to intervene in any condemnation proceedings.

9.  <u>Liens</u>.

Tenant shall not suffer or permit any lien to attach to the Premises or any improvements constructed thereon.  In

the event that any mechanics' lien is filed against the
Premises or such improvements as a result of additions,
alterations, repairs, installations or improvements made by
Tenant, or any other work or act of Tenant, Tenant shall
discharge the same within thirty (30) days from the filing
thereof.  Nothing contained in this Lease shall be construed
as constituting the express or implied consent or permission
of Landlord for the performance of any labor or services for
the Tenant, or the furnishing of any materials to the Tenant,
that would give rise to any such lien against Landlord's interest
in the Premises and Landlord shall not be liable for any
labor or materials furnished or to be furnished to Tenant
upon credit.  Tenant may, if it disputes the amount or validity
of any lien, contest and defend against the same at its own
expense subject to the same conditions and rights as are set
forth in Section 3(d) with respect to contests of Real Estate Taxes.

10.  Default and Remedies of Landlord.

(a)  Event of Default.  Any one or more of the
following events shall constitute an Event of Default:

(i)  If default shall be made in the due and
punctual payment of Rent or Additional Charges or any part
thereof payable hereunder, when and as the same shall become
due and payable, or

(ii)  If default shall be made by Tenant in
the performance of, or in compliance with, any of the other
covenants, agreements or conditions contained herein.

- 16 -

(b)  <u>Notice of Default</u>.  Upon the occurrence
of an Event of Default, Landlord may serve upon Tenant
a Notice of Default, which shall specify in detail the claimed
default, which Notice of Default shall also be served upon any
Leasehold Mortgagee, and no such notice shall be effective
as a Notice of Default unless a copy of such notice is so
served upon all Leasehold Mortgagees.

(c)  <u>Action Upon Notice of Default</u>.

(i)  In the case of an Event of Default described
in Section 10(a)(i), Tenant shall be entitled to thirty (30)
days from the date of receipt of a Notice of Default in which
to cure such default.

(ii)  In the case of an Event of Default described
in Section 10(a)(ii), Tenant shall be entitled to sixty (60)
days from the date of receipt of a Notice of Default in which
to cure such default.  In addition, if the Event of Default is
of such nature that it cannot, by due diligence, be cured within
such sixty (60) day period of time, if Tenant shall commence
the curing of such default within such period of time, Tenant
shall be entitled to as long a period of time to cure such
default as may be required by Tenant in the exercise of reasonable
diligence in endeavoring to cure such default.

(d)  <u>Notice of Continuing Default</u>.  If an Event
of Default occurs and is continuing beyond the time periods
set forth in Section 10(c) for the curing of same, Landlord may
serve upon any Leasehold Mortgagee a Notice of Continuing
Default, which shall specify in detail the claimed default which
is continuing, which Notice of Continuing Default shall also
be served upon Tenant, and no such notice shall be effective
as a notice of continuing default unless a copy of such notice
is so served upon Tenant.

(e)   <u>Action Upon Notice of Continuing Default</u>.

(i)   In the case of an Event or Default described in Section 10(a)(i), a Leasehold Mortgagee shall be entitled to thirty (30) days from the date of receipt of a Notice of Continuing Default in which to cure such default.

(ii)   In the case of an Event of Default described in Section 10(a)(ii), a Leasehold Mortgagee shall be entitled to sixty (60) days from the date of receipt of a Notice of Continuing Default in which to cure such default.  In addition, if the Event of Default is of such nature that it cannot, by due diligence, be cured within such sixty (60) day period of time, if a Leasehold Mortgagee shall commence the curing of such default within such period of time, the Leasehold Mortgagee shall be entitled to as long a period of time to cure such default as may be required by the Leasehold Mortgagee, in the exercise of reasonable diligence in endeavoring to cure such default.

(f)   <u>Notice of Termination</u>.  In the event that (a) an Event of Default occurs, (b) Landlord serves upon Tenant a Notice of Default as defined in Section 10(b), (c) within the pertinent time period described in Section 10(c), Tenant fails to cure the specified default, (including failure to commence curing pursuant to Section 10(c)(ii)), (d) Landlord then serves upon each Leasehold Mortgagee a Notice of Continuing Default as defined in Section 10(d), (e) within the pertinent time period described in Section 10(e), a Leasehold Mortgagee fails to cure the specified default (including failure to commence curing pursuant to Section 10(e)(ii)),then Landlord may serve upon Tenant a Notice of Termination (which shall also be sent to any Leasehold Mortgagee and which shall not be effective unless so sent), and which shall provide that, unless

- 18 -

the precise default specified in the Notice of Default and again precisely specified in the Notice of Continuing Default and again precisely specified in the Notice of Termination is cured (or unless curing is commenced, if applicable) within fifteen (15) days of the date of receipt of the Notice of Termination, then, upon the expiration of such fifteen (15) days, the Term of this Lease shall expire and terminate.

(g)    Landlord's Remedies with Respect to the Premises.  Upon the expiration or termination hereof pursuant to the provisions of Section 10(f), Tenant shall quit and peaceably surrender the Premises, without any payment by Landlord, without further notice, any and all notice to quit, notice of intention to re-enter, or any other notices, and any institution of legal proceedings, being hereby waived. Notwithstanding any other provisions contained in this Lease to the contrary, Landlord agrees that the obligations of Tenant hereunder (including that of a Leasehold Mortgagee who shall succeed to and/or "assume" the obligations of Tenant hereunder, as well as that of any person whose title is derived through a Leasehold Mortgagee or who succeeds to the interest of the "Tenant," whether by reason of the purchase of the leasehold estate upon foreclosure of a Leasehold Mortgage or otherwise) shall not constitute personal obligations of the persons or entity which is Tenant, or the owners, partners, joint venturers, officers, or other representatives of any business entity which at any time is the Tenant, and Landlord expressly covenants and agrees that Landlord will not institute, prosecute, or attempt to enforce in any court, or otherwise, any action for specific performance or to recover or collect from Tenant or from any assignee of Tenant (including any Leasehold Mortgagee or assignee or designee of such Leasehold Mortgagee) at any

- 19 -

time succeeding to the interest of Tenant under this Lease,
or at any time owning, or who had previously owned, the
leasehold estate of Tenant, any moneys claimed for damages
for breach of any agreement or covenant herein, it being
agreed by Landlord that if Tenant, or any such successor in
interest of Tenant, shall default in such rental or other payment
or other obligation, Landlord will limit and restrict its rights
and remedies hereunder solely to the recovery of possession
of the Premises; provided, however, that Tenant shall be
personally liable for the payment of Rent and Additional
Charges up to the date that possession of the Premises is
tendered to or recovered by Landlord.  The provisions of
this Section 10(g) constitute an express covenant and agree-
ment on the part of the Landlord, and constitute a material
inducement to execution of this Lease by Tenant.

(h)  Waiver of Distraint.  Landlord hereby waives
any and all rights the Landlord has or may have by reason of
this Lease (or by reason of statute or common law) to distrain
for rent upon the Premises, or upon any property upon the Premises,
whether such property is the property of the Tenant, or is
the property of any other person.

(i)  Mortgagees.  In the event that there is in
existence a Leasehold Mortgage, the additional provisions
in respect of default (if any) contained in Section 12 (relating
to a Leasehold Mortgage) shall also apply, notwithstanding any
other provision in this Section 10.

11.  Covenant and Warranty of Title.

Landlord hereby warrants and represents that the
Premises shall, on the date of execution of this Lease and

- 20 -

on the Lease Commencement Date, be owned by the Landlord in fee simple, that Landlord's title thereto is and shall be good of record and in fact, marketable and free of all liens, encumbrances, leases, easements, encroachments, covenants, conditions or restrictions other than those set forth in Exhibit A attached hereto and incorporated herein by this reference.  Landlord further warrants and represents that the title to Tenant's leasehold estate hereunder shall be insurable by a recognized title insurance company at standard rates, without any exceptions (including "printed form" exceptions) other than those set forth in Exhibit A.

12.  Leasehold Mortgages.

(a)  Rights of Leasehold Mortgagees.  Tenant shall have the right, at any time and from time to time, to place one or more Mortgages on its interest in this Lease and to assign its rights under this Lease as security for such Mortgages upon the condition that all rights acquired under such Mortgages shall be subject to each and all of the covenants, conditions and restrictions set forth in this Lease and to all rights and interest of Landlord herein.  Any such Mortgage placed by Tenant on Tenant's interest in this Lease is hereinafter referred to as a "Leasehold Mortgage" and the party secured by such Leasehold Mortgage is hereinafter referred to as a "Leasehold Mortgagee." Landlord shall not be obligated to join in or subordinate its fee simple interest to any Leasehold Mortgage.  The execution and delivery of a Leasehold Mortgage shall not be deemed to constitute an assignment or transfer of Tenant's leasehold interest nor shall a Leasehold Mortgagee, as such, be deemed to be an assignee or transferee of this Lease so as to require such holder to perform any of the terms, covenants or conditions to be performed by Tenant hereunder.  If a Leasehold Mortgagee sends to Landlord

- 21 -

written notice of the existence of a Leasehold Mortgage,
which notice specifies the name and address of the Leasehold
Mortgagee (including the names and addresses of any agents or
representatives of the Leasehold Mortgagee who are to receive
copies of notices sent to the Leasehold Mortgagee), the
following provisions shall apply so long as such Leasehold
Mortgage remains unsatisfied of record:

    (i)   There shall be no cancellation, surrender,
modification or amendment of this Lease by joint action of
Landlord and Tenant without the prior written consent of the
Leasehold Mortgagee.

    (ii)   Each Leasehold Mortgagee shall have the right,
but shall not be obligated, to do any act required to be per-
formed by Tenant hereunder, and performance of any such act
by a Leasehold Mortgagee shall be effective to prevent a default
from occurring hereunder to the same extent as if such act had
been performed by Tenant.

    (iii)   Notwithstanding any provision in this Lease
to the contrary, each Leasehold Mortgagee shall have the right
to (a) succeed to the interest of Tenant by foreclosure,
(b) pending foreclosure of any Leasehold Mortgage or deed in
lieu thereof, take possession of the Premises and exercise all
rights of Tenant with respect thereto and (c) thereafter assign
the leasehold estate so acquired to any other person.   The
Leasehold Mortgagee shall furnish Landlord with a copy of the
executed instrument of assignment.

    (iv)   Landlord shall, upon serving Tenant with
any Notice of Default or Notice of Continuing Default or Notice
of Termination, simultaneously serve a copy of such notice upon
each Leasehold Mortgagee (with copies to the agents and
representatives of the Leasehold Mortgagee of whom Landlord

- 22 -

has been furnished the names and addresses by the Leasehold
Mortgagee), which notice shall not be effective until served
on each such Leasehold Mortgagee (including such agents and
representatives).  Each such Leasehold Mortgagee shall there-
upon have the period of time described in Section 10, after
receipt of such notice upon it, to remedy or cause to be
remedied the defaults complained of as does Tenant, and
Landlord shall accept such performance by or at the instigation
of such Leasehold Mortgagee as if the same had been done by
Tenant.

     (v)   If an Event of Default described in Section
10(a)(ii) occurs, Landlord agrees that if, within thirty (30)
days after the Notice of Continuing Default referred to in
Section 10(d) hereof is given by Landlord to a Leasehold
Mortgagee, such Leasehold Mortgagee shall:

     (A)   notify Landlord of its election
to proceed with due diligence to foreclose
the Leasehold Mortgage or otherwise to
proceed promptly to acquire possession of the
Premises; and

     (B)   deliver to Landlord an instrument
in writing duly executed and acknowledged wherein
the Leasehold Mortgagee agrees that

     (1)   during the period that
such Leasehold Mortgagee shall be in
possession of the Premises and/or
during the pendency of any such fore-
closure or other proceedings and until
the interest of Tenant in this
Lease shall terminate, as the case may
be, it will pay or cause to be paid

- 23 -

to Landlord all sums from time to time
becoming due under this Lease for Rent
and Additional Charges; and

(2) if delivery of possession
of the Premises shall be made to such
Leasehold Mortgagee or to its nominee,
whether voluntarily or pursuant to any
foreclosure or other proceedings or
otherwise, such Leasehold Mortgagee
shall, promptly following such delivery
of possession, perform or cause such
nominee to perform, as the case may be,
all the covenants and agreements herein
contained on Tenant's part to be per-
formed to the extent that Tenant has
failed to perform the same to the date
of delivery of possession, as aforesaid,
except such covenants and agreements
which cannot with the exercise of due
diligence be performed by such Leasehold
Mortgagee or such nominee;

then Landlord shall postpone the delivery of any Notice of
Termination and postpone any other action as a consequence of
such default for such period or periods of time as may be
necessary for such Leasehold Mortgagee, with the exercise of
due diligence, to acquire Tenant's interest in this Lease, as
aforesaid, and to perform or cause to be performed all of the
said covenants and agreements herein contained, as aforesaid.
Upon such acquisition of Tenant's interest in this Lease and
such performance by such Leasehold Mortgagee or such nominee,
or by any purchaser of this Lease pursuant to any foreclosure

proceeding, Landlord's right to declare this Lease terminated
or to take any other action based upon the occurrence of any
uncured default or the existence of any uncured default which
cannot with the exercise of due diligence be remedied by such
Leasehold Mortgagee or its nominee or by such purchaser,
shall be, and be deemed to be, waived.  Nothing herein contained
shall be deemed to require a Leasehold Mortgagee to continue
with any foreclosure or other proceedings or, in the event
such Leasehold Mortgagee shall otherwise acquire possession of the
Premises, to continue such possession, if the Event of Default in
respect of which Landlord has given the Notice of Continuing
Default is remedied.  If prior to any sale pursuant to any
proceeding brought to foreclose a Leasehold Mortgage, or
if prior to the date on which Tenant's interest in this Lease
is otherwise extinguishable, the Event of Default in respect
of which Landlord gives the Notice of Continuing Default is
remedied and possession of the Premises is restored to Tenant,
the obligation of the Leasehold Mortgagee pursuant to the
instrument referred to in Section 12(a)(v)  shall be null and
void.

    (vi)  In addition to the agreement of Landlord
to forbear as set forth in Section 12(a)(v)  hereof, and
notwithstanding that a Leasehold Mortgagee may not have acted
during such period of forbearance, if, by reason of the
occurrence or continuance of an uncured default, this Lease is
terminated, Landlord shall, on written request of a Leasehold
Mortgagee made at any time within thirty (30) days after such
Leasehold Mortgagee has received a copy of Landlord's written
Notice of Termination, enter into a new lease of the Premises
with such Leasehold Mortgagee, or its designee, within twenty
(20) days after receipt of such request, which new lease shall be

- 25 -

effective as of the date of such termination of this Lease for
the remainder of the term of this Lease, at the same Rent and
upon the same terms, covenants, conditions and agreements as are
herein contained; provided that such Leasehold Mortgagee shall
(i) contemporaneously with the delivery of such request pay to
Landlord all the installments of Rent and Additional Charges
which Tenant was obligated but failed to pay through the date
of such termination; (ii) pay to Landlord at the time of the
execution and delivery of said new lease any and all sums for
Rent and Additional Charges which would have been due here-
under from the date of termination of this Lease (had this
Lease not been terminated) to and including the date of the
execution and delivery of said new lease, together with all
expenses, including reasonable attorneys' fees, incurred by
Landlord in connection with the termination of the Lease and
with the execution and delivery of such new lease, less the
net amount of all sums received by Landlord from any sub-
lessees in occupancy of any part or parts of the Premises up to
the date of commencement of such new lease; and (iii) on or prior
to the execution and delivery of said new lease, agree in writing
that promptly following the delivery of such new lease, such
holder or its designee shall, with due diligence and within a
reasonable time, perform or cause to be performed all of the other
covenants and agreements herein contained on Tenant's part to be
performed to the extent that Tenant shall have failed to perform
the same to the date of delivery of such new lease, except such
covenants and agreements which cannot with the exercise of due
diligence be performed by such holder or such designee.  Landlord
shall have no obligation to deliver physical possession of the
Premises to such Leasehold Mortgagee unless Landlord at the time
of the execution and delivery of such new lease has obtained
physical possession thereof.  Such new lease shall have the same
relative priority in time and in right as this Lease and shall

have the benefit of, and shall vest in such Leasehold Mortgagee
all of the right, title, interest, powers and privileges of the
Tenant hereunder in and to the Premises, including specifically
assignment of Landlord's interest in and to all then existing
subleases, automatic vesting of Landlord's right, title and
interest in and to the improvements and appurtenances on or
above the Premises, as well as all furniture, furnishings, ap-
pliances, equipment, fixtures and machinery therein, until
expiration of the Term as the same may be extended.

      (b)    <u>No Merger</u>.  There shall be no merger of
this Lease, or of the leasehold estate created by this Lease,
with the fee estate in the Premises by reason of the fact that
this Lease or the leasehold estate created by this Lease or any
interest therein may be held, directly or indirectly, by or for
the account of any person who owns the fee estate in the Premises
or any interest in such fee estate, and no such merger shall
occur unless and until all persons at the time having an inter-
est in the fee estate in the Premises and all persons (including
a Leasehold Mortgagee) having an interest in this Lease shall
join in a written instrument effecting such merger and shall duly
record the same.

      (c)    <u>Multiple Leasehold Mortgagees</u>.  If at any
time there shall be more than one Leasehold Mortgage consti-
tuting a lien on this Lease and the leasehold estate hereby
created, the Leasehold Mortgagee prior in lien to all others shall
be vested with the rights (and thereby subject to the require-
ments) under this Section 12 to the exclusion of any junior Lease-
hold Mortgagee; provided, however, that if the Leasehold
Mortgagee prior in lien to all other Leasehold Mortgagees fails

- 27 -

or refuses to exercise the rights set forth in this Section 12,
each Leasehold Mortgagee junior in lien in the order of priority
of their respective liens shall have the right to exercise such
rights; and provided further that with respect to the right of
a Leasehold Mortgagee under Section 12(a)(vi) to request a new
lease, if there is more than one Leasehold Mortgagee and the
Leasehold Mortgagee prior in lien to all others shall not have
exercised such right, the Leasehold Mortgagees junior in lien
in the order of priority of their respective liens may exercise
such right, provided such request shall be made no later than
fifteen (15) days after the expiration of the thirty (30) day
period referred to in Section 12(a)(vi) has elapsed, and such
new lease shall be executed and delivered within twenty (20)
days after receipt of such request by a junior Leasehold Mortgagee,
and said junior Leasehold Mortgagee shall comply with all of the
requirements of Section 12(a)(vi).

(d)    No Subordination of Freehold.  The fore-
going provisions do not give any person whatsoever the right to
mortgage, hypothecate or otherwise encumber or to cause any
liens to be placed upon the freehold estate of Landlord, nor
shall the foregoing provisions in any event be construed as re-
sulting in a subordination in whole or in part of the freehold
estate of Landlord to any indebtedness of Tenant.

(e)    Financing Requirements.  In the event that any
lender to Tenant shall reasonably require as a condition to the
making of a loan secured by a Leasehold Mortgage that this Lease
be amended or that other written assurances of the rights of
Tenant and the Leasehold Mortgagee be given by the Landlord, then
Landlord and Tenant shall amend this Lease within its general

- 28 -

purview and terms and/or Landlord shall promptly execute an
instrument containing such assurances and fully cooperate with
Tenant for the purpose of complying with the reasonable
requirements of such lender, provided that under no circum-
stances may such amendment operate to reduce the Rent or
Additional Charges which Tenant is obligated to pay hereunder
or otherwise have any substantial effect upon the Landlord's
estate in the Premises.

      13.  <u>Quiet Enjoyment</u>.

      Landlord covenants that Tenant, upon paying the Rent
and the Additional Charges, and upon performing and observing
all of the other terms, covenants, conditions and provisions
of this Lease on Tenant's part to be kept, observed and
performed, shall quietly hold, occupy and enjoy the Premises
during the Term without hindrance, ejection or molestation by
Landlord or any party claiming through or under Landlord.

      14.  <u>Certificates</u>.

      (a)  After the Lease Commencement Date, upon request
of either party, Landlord and Tenant shall each promptly execute,
acknowledge and deliver a written instrument, in recordable
form, certifying the Lease Commencement Date.

      (b)  Tenant and Landlord shall, without charge
therefor, at any time and from time to time during the Term within
15 business days after request therefor by the other party, execute,
acknowledge and deliver to the other party a written estoppel
certificate certifying to the other party or any person designated
by the other party, as of the date of such estoppel certificate,
(i) that Tenant is in possession of the Premises; (ii) that this
Lease is unmodified and in full force and effect (or if there

- 29 -

have been modifications, that this Lease is in full force and
effect as modified and setting forth such modifications), (iii)
whether there are then existing any set-offs or defenses against
the enforcement of any right or remedy of the other party or any
duty or obligation of the certifying party; (vi) that the
certifying party has no knowledge of the occurrence of any
event which, with the giving of notice or the passage of
time, would entitle the certifying party to terminate this
Lease (or if the certifying party has such knowledge,
specifying the same in detail); and (vii) the current names
and addresses to which notices under this Lease should be sent.

     15.  <u>Assignment and Subletting.</u>

     Tenant may assign this Lease or sublet all or any portion
of the Premises without obtaining Landlord's consent.  So long
as any subtenant under any sublease shall not be in default
under its respective lease of space so as to entitle the
landlord under such sublease to terminate the sublease, such
subtenant shall not be named as a party in any action or
proceeding to recover possession which may be instigated or
taken by Landlord, nor shall such subtenant be evicted from
the premises subleased, nor shall the leasehold estate of any
such subtenant be terminated by reason of any default by Tenant.
Landlord further agrees that upon receipt of any request from
any such subtenant, that Landlord will grant such assurances
to such subtenant as may be requested of its continued right
to occupy its leased space pursuant to the terms of its sublease
and of its rights under this Section 15.

16.   <u>Right of First Refusal</u>.

Landlord may not transfer Landlord's interest in the Premises during the Term (other than a transfer [by trust or otherwise] to family members, in which event the provisions of this Section 16 shall apply to any subsequent transfer by such trustee or by such family members) without first offering to sell its interest in the Premises to Tenant at the same price and upon the same terms and conditions as are contained in any offer to purchase.  Landlord shall give Tenant notice of the name and address of the offeror and a full and complete copy of the entire offer, and Tenant shall have thirty (30) days from such notice in which to elect to purchase the Premises for the consideration, and on the terms and conditions, contained in such offer.  If Tenant shall not have exercised such election, Landlord shall have the right, for a period of two (2) months following the expiration of such thirty (30) day period, to sell the Premises to such offeror for a consideration not less than, and upon terms not more favorable to offeror than, the consideration and terms stated in such notice, and in the event of such a sale, the rights of Tenant under this Section 16 shall be extinguished.  On the other hand, if Landlord does not so sell the Premises within such two (2) month period of time, Tenant's rights under this Section 16 shall continue to be applicable to Landlord in respect of any offer to purchase.

17.   <u>Surrender of Premises</u>.

Tenant shall, on or before the last day of the Term, peaceably and quietly leave, surrender and yield up to Landlord the Premises.

18.   <u>Leasing Commissions</u>.

Landlord recognizes that Tenant has utilized the services of Jay Hellman in these negotiations, and Landlord and Tenant each represent and warrant to the other that neither of them has employed any other broker in carrying on the negotiations relative to this Lease.  Tenant shall pay all commissions due to Jay Hellman.  Landlord and Tenant shall each indemnify and hold harmless the other from and against any other claim for brokerage or other commissions arising from or out of any breach of the foregoing representation and warranty.

19.   <u>General Provisions</u>.

(a)   The covenants, conditions and other provisions herein contained shall be binding upon, and shall inure to the benefit of, the parties hereto and each of their respective personal representatives, successors, heirs, devisees and assigns.

(b)   No failure by Landlord or Tenant to insist upon the strict performance of any term, covenant, agreement, provision, condition or limitation of this Lease or to exercise any right or remedy consequent upon a breach thereof, and no acceptance by the Landlord of full or partial rent during the continuance of any such breach shall constitute a waiver of any such breach or of any such term, covenant, agreement, provision, condition or limitation by such party.  No term, covenant, agreement, condition or limitation of this Lease to be kept, observed or performed by Landlord or by Tenant, and no breach thereof, shall be waived, altered or modified except by a written instrument executed by Landlord or by Tenant, as the case may be.  No waiver of any breach shall affect or alter

this Lease, but each and every term, covenant, agreement, provision, condition and limitation of this Lease shall continue in full force and effect with respect to any other then existing or subsequent breach thereof.

(c)  Landlord hereby recognizes that Landlord's delay in taking timely action under this Lease when required to do so hereunder may cause the Tenant great and irreparable injury.  Whenever a provision in this Lease requires the Landlord to act promptly or within a designated period of time (such as within fifteen (15) business days after written request from Tenant), and Landlord fails to take the required action promptly or within the stipulated time period, (i) the Tenant shall be entitled to injunctive relief compelling the Landlord to take the required action, (ii) the Landlord shall be responsible and liable for all consequential damages incurred by the Tenant as a result of Landlord's failure to take timely action (provided, the provisions of this clause (ii) shall only be applicable to periods up to and including the completion of construction of,and the issuance of a final certificate of occupancy for, the first new building constructed by the Tenant on the Premises, following which the provisions of this clause (ii) shall lapse and expire), and (iii) Tenant shall be entitled to any other remedies available under this Lease or available either at law or in equity, or both.

(d)  Tenant may, if it in good faith and on reasonable grounds disputes the validity of any charge, complaint or action taken by any governmental authority having juris-diction over the Premises pursuant to or under color of any

- 33 -

statute, rule, order, ordinance, requirement or regulation, defend against the same in good faith.  Tenant shall hold Landlord harmless with respect to any actions taken by any governmental authorities having jurisdiction with respect thereto.

　　　　(e)  No notice, request, consent, approval, waiver or other communication which may be or is required or permitted to be given under this Lease shall be effective unless the same is in writing and is delivered in person or sent by registered or certified mail, return receipt requested, first-class postage prepaid, (1) if to Landlord, to (i) Nunziato Di Perna and Anna Di Perna at 1925 Shivers Drive, Alexandria, Virginia, (ii) Virginia Di Perna Lenzo and Tindaro Lenzo at 3409 Broad Branch Terrace, N.W., Washington, D.C. 20008, (iii) Maria Di Perna Tripoli, Santi Tripoli, Mario Tripoli and Cettina Maria Tripoli at such address of which they may in the future notify Tenant in writing, and (iv) Mitchell Blankstein, Esq. at 1725 DeSales Street, N.W., Washington, D.C. 20036, (2) if to Tenant, to (i) Albert Abramson, c/o Tower Construction Company, 1707 L Street, N.W., Washington, D.C. 20036, (ii) Theodore N. Lerner, 900 Wheaton Plaza North, Wheaton, Maryland 20902, and (iii) Arnold J. Kohn, c/o Arent, Fox, Kintner, Plotkin & Kahn, 1815 H Street, N.W., Washington, D.C. 20006, or to any other persons and at any other addresses that may be given by one party to the other by notice pursuant to this subsection.  Such notices, if sent by registered or certified mail, shall be deemed to have been given at the time of mailing, unless otherwise provided herein.

(f)  It is understood and agreed by and between the parties hereto that this Lease contains the final and entire agreement between said parties, and that they shall not be bound by any terms, statements, conditions or representations, oral or written, express or implied, not herein contained.

(g)  If any provision of this Lease or the application thereof to any party or circumstance shall to any extent be invalid or unenforceable, the remainder of this Lease, or the application of such provision to parties or circumstances other than those to which it is invalid or unenforceable, shall not be affected thereby, and each provision of this Lease shall be valid and enforceable to the fullest extent permitted by law.

(h)  The captions throughout this Lease are for convenience of reference only and the words contained therein shall in no way be held or deemed to define, limit, describe, explain, modify, amplify or add to the interpretation or construction of any provision of this Lease.

(i)  Wherever appropriate herein, the singular shall include the plural and the plural shall include the singular, and words of any gender shall be held to include any other gender.

(j)  Whenever the word "including" is used herein, it shall be deemed to mean "including but not limited to."

(k)  Both parties shall execute, acknowledge and deliver a short form lease prepared by the Tenant in recordable form setting forth a description of the Premises, the duration of the Term and any other provisions of this Lease which Tenant

- 35 -

may request.  The Tenant may record said short form lease
at Tenant's expense.  Such short form lease shall not change
the rights and obligations of the parties under this Lease.

(l)  Landlord and Tenant waive trial by jury in
any action or proceeding brought by either of the parties hereto
against the other or on any counterclaim in respect thereof on
any matters whatsoever arising out of, or in any way connected
with, the Lease, the relationship of Landlord and Tenant, Tenant's
use or occupancy of the Premises, and/or any claim of injury
or damage under this Lease.

(m)  Landlord shall not be construed or held to
be a partner or associate of Tenant in the conduct of Tenant's
business, it being expressly understood and agreed that the
relationship between the parties hereto is and shall at all
times remain, during the Term, that of Landlord and Tenant.

(n)  The captions, titles and article, section
or paragraph headings (including the table of contents) are
inserted only for convenience, and they are in no way to be
construed as a part of this Lease, or as a limitation on the
scope of the particular provisions to which they refer.

(o)  This Lease is made pursuant to, and shall
be construed and enforced in accordance with the laws in
force in the District of Columbia.  All provisions of this Lease
shall be construed to be "conditions" and "covenants" as
though language specifically expressing or importing covenants
and conditions were used in each separate provision of this
Lease.

- 36 -

      (p)  This Lease has been executed in several counterparts, but all counterparts shall constitute one and the same agreement.

      IN WITNESS WHEREOF, Landlord and Tenant have executed this Lease on the day and year first above written.

              LANDLORD:

Nunziato Di Perna

Virginia Di Perna Lenzo

Mafia Di Perna Tripoli

Anna Di Perna

Tindaro Lenzo

Santi Tripoli

Mario Tripoli

Cettina Maria Tripoli

TENANT:

WASHINGTON SQUARE LIMITED PARTNERSHIP

By _____
   Albert Abramson, General Partner

By:  LERNER ENTERPRISES, a limited
     partnership, General Partner

    By _____
      Theodore N. Lerner,
      General Partner

- 37 -

EXHIBIT A

1.  Non-delinquent taxes.

2.  Building and zoning regulations in force in the District of Columbia.

3.  Right of Way, affecting Lot 16, Square 163, described as follows:  BEGINNING for the same at the Northeast corner of said Lot 16; and running thence West with the North line of said Lot 16, 40 feet; thence South, 1.50 feet; thence East parallel with said North line, 40 feet to the rear line of said Lot; thence North along said rear line, 1.50 feet to the place of beginning, for the use and benefit of the Premises.

4.  Right of Way, affecting the Premises, described as follows: BEGINNING for the same at a point in the East line of Lot 49, Square 163, distant 52.45 feet South from the North line of said Lot; and running thence South with the said East line of Lot 49, 1.55 feet to the South line of said Lot 49; thence West with said South line, 40 feet to the Southwest corner of Lot 49; thence North with the West line of said Lot 49, 27 feet; thence East at right angles to said West line, 3 feet; thence South and parallel to the West line of said Lot 49, 25.25 feet; thence East, 37 feet to the place of beginning, for the use and benefit of Lot 47 in Square 163.